ROBERT COELHO *v.* POSI-SEAL INTERNATIONAL, INC.
(13267)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued April 7—decision released June 28, 1988

*Jeremy G. Zimmermann,* with whom was *Thomas J. Flanagan,* for the appellant (defendant).

*Gilbert Shasha,* for the appellee (plaintiff).

SHEA, J. The plaintiff, Robert Coelho, alleged in his amended complaint that he had been discharged without just cause by the defendant, Posi-Seal International, Inc. (Posi-Seal), in breach of implied and express employment contracts between them.[1] At the close of its instructions, the trial court provided the jury with a special verdict form on which to answer special interrogatories relating to the allegations of the complaint. The jury returned its verdict on the special verdict form. The jury found the issues for the plaintiff on his implied contract count but found for Posi-Seal on his express contract claim.[2] After denying motions of both

---

[1] The second count of the plaintiff's complaint, which was filed on August 20, 1985, alleged that he was terminated because of unlawful age discrimination. On November 6, 1985, the commission on human rights and opportunities found that there was insufficient evidence to support the plaintiff's allegations concerning age discrimination. On July 14, 1986, the trial court struck the age discrimination count of the plaintiff's complaint. In this appeal the plaintiff does not challenge the court's action in that regard.

[2] The jury answered the following special interrogatories relating to the allegations of the first and third counts of the complaint:

parties to set aside the verdict, the court rendered judgment in accordance with the verdict.[3] Posi-Seal has appealed from the judgment.[4] We find no error.

"JURY INTERROGATORIES

FIRST COUNT

1. Did the parties enter into an implied agreement whereby Plaintiff's employment could only be terminated for just cause?

    Yes ___✔___

    No _____

2. If so, did the Plaintiff rely on this agreement to his detriment when he came to work for the Defendant?

    Yes ___✔___

    No _____

3. If so, did the Defendant terminate Plaintiff's employment without just cause?

    Yes ___✔___

    No _____

If any of the above questions are answered 'No,' your verdict on the First Count should be for the Defendant. If all are answered 'Yes,' your verdict on the First Count should be for the Plaintiff and you should proceed to consider the issue of damages.

THIRD COUNT

1. Did the parties enter into an express agreement whereby Plaintiff's employment could only be terminated for just cause?

    Yes _____

    No ___✔___ "

[3] The verdict was accepted on April 10, 1987. Posi-Seal did not file its motion to set aside the verdict until April 16, 1987, six days after the verdict had been accepted. The plaintiff also filed his motion to set aside the verdict on April 16, 1987. In *Small* v. *South Norwalk Savings Bank,* 205 Conn. 751, 756–59, 535 A.2d 1292 (1988), this court held that Practice Book §§ 320 and 321 require that motions for a new trial, to set aside a verdict, and for judgment notwithstanding verdict must be filed with the clerk within five calendar days after the day the verdict is accepted or judgment rendered unless the last day to file falls upon a day when the clerk's office is closed. We held that a party's failure to file a timely motion to set aside the verdict limits this court to ascertaining whether there has been plain error. Id., 758. In *Small,* however, the plaintiff promptly objected to the defendant's motions in arrest of judgment on the ground of untimeliness. In the case at bar, the plaintiff did not object to the defendant's motion to set aside the verdict on the ground that it was untimely. Indeed, neither party was aware that their motions to set aside the verdict were untimely until this court pointed out this problem at argument. Accordingly, we apply the normal standard of review applicable in a civil appeal. See Practice Book § 4185.

[4] On August 17, 1987, the plaintiff filed a preliminary statement of issues as the appellee. See Practice Book § 4013 (a) (1). "Plaintiff-Appellee intends

Posi-Seal claims that the trial court erred in refusing to set aside the verdict: (1) when there was insufficient evidence to permit the jury to find (a) that the parties had made an implied agreement that the plaintiff could not be terminated without just cause, (b) that the plaintiff had relied on the implied agreement to his detriment, and (c) that the plaintiff had been terminated without just cause; and (2) when the court had failed to instruct the jury that a termination because of a reduction in force is, as a matter of law, just cause.

From the evidence at trial the jury could reasonably have found the following facts: Posi-Seal is a corporation with its principal office in the town of North Stonington. It manufactures high performance valves for the chemical, petroleum and nuclear industries. In January, 1981, the plaintiff, who was then unemployed, had a job interview with the president of Posi-Seal, Donald Miller. On February 9, 1981, the plaintiff commenced employment with Posi-Seal as quality control manager. On January 6, 1984, Posi-Seal terminated his employment.

I

Posi-Seal first claims that there was insufficient evidence to permit the jury to find that the parties had made an implied-in-fact agreement that the plaintiff could not be terminated without just cause.

The plaintiff's evidence of an implied-in-fact agreement consisted of his own testimony concerning statements made by Miller, president of Posi-Seal, both prior

to present the following issues on this appeal: (1) Did the Court err in excluding plaintiff-appellee's testimony as to other job offers he had received in addition to the job offer of the defendant-appellant and thereby prevent the plaintiff-appellee from demonstrating the full extent of his damages?" The plaintiff in his brief indicated that this evidentiary issue would arise only if this court remanded this case for a new trial. In light of our disposition concerning Posi-Seal's appeal, we need not address this issue.

to and after his employment commenced on February 9, 1981. The plaintiff testified that he had raised his concerns about job security when Miller interviewed him in January, 1981. The plaintiff testified that Miller had made the following statement about job security. "[Posi-Seal is] the General Motors of the future. If you come to work with us, you'll never have to worry. Grow with us into the future. As long as you do your job, you'll . . . have a good future with us." The plaintiff further testified that, before he was hired by Posi-Seal, Miller had told him: "Those people that join us now are going to grow with us into the future."

The plaintiff testified that he had, during this interview with Miller, expressed serious reservations about becoming manager of quality control at Posi-Seal because he believed that there was an inherent conflict between the managers of quality control and of manufacturing about whether to emphasize meeting quality standards or reducing costs. The plaintiff was aware that the previous manager of quality control had recently left Posi-Seal. The plaintiff testified that he had told Miller: "If I'm going to take a job like this, I need to know we're going to have support from the upper levels of management. That I'm going to have the support that I need to do my job, if you want me to do it." The plaintiff testified that, in response to his concern that a quality department must have assurances from management in order to function properly, Miller had said: "You'll get it here." During the trial, Posi-Seal's counsel asked the plaintiff: "And you also told him that you wanted to be in a situation where the quality would be backed up with regard to disputes with manufacturing; is that right?" He responded: "I wanted to know that I could properly perform my job." The next question was: "And he told you that he'd see that the quality was backed up?" The plaintiff answered: "He had no problem in backing me to the hilt." The

next question was: "Is it fair to say that what he responded to your statement of your expectations was, 'We'll back up quality, and we believe we've got a great future here, and we're going to go far?' " The plaintiff then replied: "I guess that's what he said. He said, 'We've got a great future here.' The problem I [have] is with the word 'believe.' I don't believe that . . . at [any] time did Don Miller use the word 'believe.' He said, 'We've got a great thing here, we're growing in the future, and join us, and come with us.' "

The plaintiff also testified that, after he had commenced employment with Posi-Seal, Miller further guaranteed him support and job security when the plaintiff had become involved in a dispute with the manager of manufacturing at Posi-Seal. The plaintiff testified: "Time and time again [Miller] said to me, 'Don't worry about it. Don't worry about it. You're all set. You don't have to worry. Just do your job. If I've got you and [the head of manufacturing] butting heads, then I know you're doing your job. Don't worry about it.' " In addition, the plaintiff testified that at management meetings Miller would frequently make statements concerning the job security of his management "team," with the clear implication that the plaintiff was a member of this team. In this regard, the plaintiff testified: "Miller had a habit . . . had a particular set of words that he liked, and at staff meetings he'd slide his back away from the table and say, 'This is the team.' He said that time and time again, 'this is the team.' And he made references to, 'This is the team that will take us into the next century. This is the team of the future. This is the team that will carry this company ahead.' "

" 'A contract implied in fact, like an express contract, depends on actual agreement.' " *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 211 n.2, 520 A.2d 217 (1987); *Therrien* v.

*Safeguard Mfg. Co.,* 180 Conn. 91, 94, 429 A.2d 808 (1980); *Brighenti* v. *New Britain Shirt Corporation,* 167 Conn. 403, 406, 356 A.2d 181 (1974); *Corriveau* v. *Jenkins Bros.,* 144 Conn. 383, 387, 132 A.2d 67 (1957). Accordingly, to prevail on the first count of his complaint, which alleged the existence of an implied agreement between the parties, the plaintiff had the burden of proving by a fair preponderance of the evidence that Posi-Seal had " 'agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment' " to him under which he could not be terminated without just cause. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 212 n.2; *Therrien* v. *Safeguard Mfg. Co.,* supra, 94–95.

Posi-Seal contends that all of the statements that the plaintiff testified had been made to him were, at most, merely expressions of Miller's expectations about the future, and were not manifestations of a present intention on the part of the company to undertake contractual obligations to the plaintiff under which he could not be terminated without just cause.

"In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. *Campbell* v. *Gould,* 194 Conn. 35, 41, 478 A.2d 596 (1984). The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness. *Herb* v. *Kerr,* [190 Conn. 136, 139, 459 A.2d 521 (1983)]; *Katsetos* v. *Nolan,* [170 Conn. 637, 656, 368 A.2d 172 (1976)]. This is so because '[f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, on the printed record, what factors, if any, could have improperly influenced the jury.' *Birgel* v. *Heintz,* 163 Conn. 23, 26, 301 A.2d 249 (1972) . . . . It is the function

of this court to determine whether the trial court abused its discretion in denying [a party's] motion." *Mather* v. *Griffin Hospital,* 207 Conn. 125, 139, 540 A.2d 666 (1988).

"Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact. As an inference of fact, it is not reversible [error] unless the [trier of fact] could not reasonably have arrived at the conclusion that it reached." *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981). "This process of inference is peculiarly a jury function, the raison d'etre of the jury system." *Pierce* v. *Albanese,* 144 Conn. 241, 256, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957).

We need not decide whether there was sufficient evidence to permit the jury to find that the parties had an implied agreement that the plaintiff could not be terminated without just cause under all circumstances. We conclude, however, that sufficient evidence was adduced to allow the jury to find that the parties had an implied agreement that the plaintiff would not be terminated as a result of conflicts between the quality control and manufacturing departments, as long as he performed adequately in his capacity as manager of quality assurance. At argument, Posi-Seal conceded that the plaintiff had a good work record while it employed him and has not claimed there was just cause for his discharge related to job performance.

In summary, the plaintiff testified that during the job interview he had expressed strong reservations to Miller about accepting the position as manager of quality control because he believed that there was an inherent conflict between the quality goals and the cost

concerns of manufacturing; that he had been aware that the previous manager of quality control had recently left Posi-Seal; that he had sought assurances that he would be backed up by Miller, if a conflict developed between the quality control and manufacturing departments, and a guarantee that he would not be terminated as a result of such a conflict; and that Miller on several occasions, both before and after the plaintiff commenced employment at Posi-Seal, had indicated that Posi-Seal would support the quality department and would not terminate the plaintiff as a result of conflicts between the quality control and manufacturing departments.

We hold that there was sufficient evidence to permit the jury to find that the parties had an implied agreement that, so long as he performed his job properly, the plaintiff would not be terminated as a result of conflicts between Posi-Seal's quality control and manufacturing departments, and, therefore, that the court did not err in denying Posi-Seal's motion to set aside the verdict in this regard.

## II

Posi-Seal claims next that there was insufficient evidence to permit the jury to find that the plaintiff had relied on the implied agreement to his detriment and that proof of such reliance was essential.

In his complaint the plaintiff alleged: "In reliance on said implied representation that his employment would not be arbitrarily terminated, the plaintiff acted in reasonable and significant reliance on the representation in one or more of the following ways: (a) plaintiff rejected other substantial employment offers in favor of accepting the subject employment; (b) plaintiff relocated at considerable inconvenience and expense to this area; (c) plaintiff purchased a house and became obligated to make substantial mortgage payments

thereon." One of the interrogatories submitted to the jury asked: "If [the parties entered into an implied agreement whereby the plaintiff's employment could be terminated only for just cause], did the Plaintiff rely on this agreement to his detriment when he came to work for the defendant?" The jury answered "yes" to this question.

Posi-Seal contends that an implied agreement not to discharge without just cause is unenforceable unless the employee detrimentally relies upon such an agreement or supplies valuable consideration in addition to his services. It relies upon cases involving contracts of "permanent" or "lifetime" employment, and maintains that such contracts are analogous to implied agreements not to discharge without just cause.

"A great majority of the cases in the United States subscribe to the doctrine that a contract for permanent employment, *if not supported by other consideration,* is terminable at will." (Emphasis in original.) *Chatelier* v. *Robertson,* 118 So. 2d 241, 244 (Fla. App. 1960); see 9 S. Williston, Contracts (3d Ed. Jaeger) § 1017, pp. 131–35; annot., 135 A.L.R. 646, 646–54.

In *Littell* v. *Evening Star Newspaper Co.,* 120 F.2d 36, 37 (D.C. Cir. 1941), the court, however, held: "Some of the courts have reasoned . . . that, to prove a contract of permanent employment, *two* considerations *must* be shown; that is, a consideration in addition to the services to be performed; and that in the absence of two considerations there can be no such contract. This misconception results from mistaking the form for the substance. If it is their purpose, the parties may enter into a contract for permanent employment—not terminable except pursuant to its express terms—by stating clearly their intention to do so, even though no other consideration than services to be performed is expected by the employer or promised by the employee.

The meaning of the cases previously referred to is that where no such intent is clearly expressed and, absent evidence which shows other consideration than a promise to render services, the assumption will be that—even though they speak in terms of 'permanent' employment—the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party." (Emphasis in original.)

In *Drzewiecki* v. *H & R Block, Inc.,* 24 Cal. App. 3d 695, 704, 101 Cal. Rptr. 169 (1972), the court held: "We embrace the prevailing viewpoint that the general rule is a rule of construction, not of substance, and that a contract for permanent employment, whether or not it is based upon some consideration other than the employee's services, cannot be terminated at the will of the employer if it contains an express or implied condition to the contrary. (53 Am. Jur. 2d, Master and Servant, § 32, pp. 107, 108; 135 A.L.R. 646.) The case of *Littell* v. *Evening Star Newspaper Co.,* supra, 120 F.2d 36, focuses on the real issue, expounds the sound viewpoint and the court's rationale should be followed in this state." In *Pine River State Bank* v. *Mettille,* 333 N.W.2d 622, 629 (Minn. 1983), the Minnesota Supreme Court adopted the *Littell* rule: "The requirement of additional consideration, like the at-will rule itself, is more a rule of construction than of substance, and it does not preclude the parties, if they make clear their intent to do so, from agreeing that the employment will not be terminable by the employer except pursuant to their agreement, even though no consideration other than services to be performed is expected by the employer or promised by the employee. See *Littell* v. *Evening Star Newspaper Co.,* [supra, 37]; *Drzewiecki* v. *H & R Block, Inc.,* [supra, 703–704]. See also Restatement (Second) of Contracts § 80, comment a (1981) (a single performance may furnish consideration for any

number of promises)." Accord *Pugh* v. *See's Candies, Inc.,* 116 Cal. App. 3d 311, 326, 171 Cal. Rptr. 917 (1981); *Toussaint* v. *Blue Cross,* 408 Mich. 579, 631, 292 N.W.2d 880 (1980). We note that most cases following the additional consideration rule in the context of "permanent" employment contracts do not address whether they are applying a rule of law or of construction. See *Toussaint* v. *Blue Cross,* supra, 600–609; 9 S. Williston, supra, § 1017, pp. 131–35; annot., 135 A.L.R. 646, 646–54.

In *Fisher* v. *Jackson,* 142 Conn. 734, 736, 118 A.2d 316 (1955), this court declared: "In the absence of a consideration in addition to the rendering of services incident to the employment, an agreement for a permanent employment is no more than an indefinite general hiring, terminable at the will of either party without liability to the other." It is not entirely clear whether in *Fisher* the court intended the additional consideration rule to be a substantive requirement or a mere aid to construction, because it concluded that the employer did not intend to offer the employee a lifetime job. "It seems clear to us that the negotiations amounted to nothing more than the hiring of a reporter for a job which was permanent in the sense that it was not a mere temporary place. The hiring was indefinite as to time and terminable by either party at his will." Id., 737. On the other hand, the case may also be viewed to rest upon the additional ground that, even if a trier of fact should conclude that the parties had an express employment contract of lifetime duration, such a contract must fail in the absence of some consideration in addition to the services to be rendered thereunder. Id., 738.

In several recent cases where this court has reviewed claims for wrongful termination of employment, we have not, in determining whether the contract was terminable only for just cause, discussed whether there

was a separate consideration, apart from the services to be performed, that would take the employment agreement out of the general rule that "contracts of permanent employment, or for an indefinite term, are terminable at will." *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 211 n.1; *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 520 A.2d 208 (1987); *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984). We have implicitly assumed that the resolution of the issue of the terminability of the employment without just cause depended wholly upon the intention of the parties as reasonably comprehended by them when the agreement was made. In *Magnan* we acknowledged that an agreement not to discharge an employee without just cause "may arise when an employee, in reliance on an implied representation that the position will not arbitrarily be terminated, leaves his current employment, or otherwise acts in reasonable and significant reliance on the representation." *Magnon* v. *Anaconda Industries, Inc.,* supra, 564–65. In *Finley,* we declared that "whether the [employer's] personnel manual gave rise to an express contract between the parties was a question of fact properly to be determined by the jury," without mention of any separate consideration requirement. *Finley* v. *Aetna Life & Casualty Co.,* supra, 199. These decisions, omitting reference to any necessity for a separate consideration to support a promise not to discharge without just cause and focusing upon the intention of the parties, are consistent with our present view that the only consideration needed to sustain such a contract is the employee's acceptance of employment on such terms. Where such an additional consideration is proved, however, it is a significant indication of an intention to form a contract of more than indefinite duration. Thus we adopt the position endorsed by the more recent cases from other jurisdictions that the

absence of a separate consideration does not inevitably invalidate a contract otherwise expressing an intention that employment not be terminable at will. *Littell* v. *Evening Star Newspaper Co.,* supra; *Pugh* v. *See's Candies, Inc.,* supra; *Drzewiecki* v. *H & R Block, Inc.,* supra; *Toussaint* v. *Blue Cross,* supra, 600–36.

Accordingly, we need not decide whether the evidence advanced by the plaintiff of reliance on the promises of the defendant was sufficient to constitute a separate consideration for the agreement not to discharge him simply because of some dispute arising from his insistence on high quality standards. The evidence that the plaintiff had foregone other job opportunities, had relocated from Massachusetts to the New London area, and had purchased a home and become obligated on a mortgage was material as proof of his reasonable expectations in light of the promises made to him, as it confirmed his testimony that special assurance concerning job security was given to him. This evidence, upon which the jury may reasonably have relied in finding the employment agreement could be terminated only for just cause, fulfilled its function in supporting the plaintiff's version of the terms of the agreement, whether or not it would satisfy the criteria for a separate consideration.

### III

Posi-Seal also claims that the trial court erred in failing to instruct the jury that a termination pursuant to or because of a reduction in force is, as a matter of law, just cause.

Posi-Seal filed the following request to charge: "A 'just cause' provision in an employment contract forbids an employer from acting arbitrarily or capriciously. It is the law that a termination pursuant to or because of an employer's reduction in the work force is just cause. The law recognizes a certain amount of

managerial discretion, and when an employer determines that it must reduce its work force, the law will not interfere with that decision. If the plaintiff was indeed terminated as part of a reduction in force at Posi-Seal, there would be no breach of his alleged agreement.'' The trial court, however, gave the following instruction: ''A just cause provision in an employment contract forbids an employer from acting arbitrarily or capriciously. Under certain circumstances a termination pursuant to or because of an employee's reduction in work force may be considered just cause. The law recognizes a certain amount of managerial discretion, and when an employer determines that it must reduce its work force the law will not interfere with that decision.'' Posi-Seal took an exception to this instruction. The essential difference between the requested charge and that given to the jury, in which two of the four sentences in the request are adopted verbatim, is that the court used a less absolutistic phraseology for the requested ''It is the law that [a reduction in force] . . . is just cause'' by substituting ''Under certain circumstances [a reduction in force] . . . may be considered just cause.'' We conclude that the trial court's statement of the reduction in force principle is a more adequate instruction on this subject under the circumstances of this case.

Posi-Seal points out that in considering an implied employment contract requiring just cause for termination, courts of other jurisdictions have held that a reduction in force is just cause. See *Grayson* v. *American Airlines, Inc.,* 803 F.2d 1097, 1099 (10th Cir. 1986); *Cox* v. *Resilient Flooring Division of Congoleum Corporation,* 638 F. Sup. 726, 731 (C.D. Cal. 1986); *Clutterham* v. *Coachmen Industries, Inc.,* 169 Cal. App. 3d 1223, 1227, 215 Cal. Rptr. 795 (1985). All of these cases, however, are distinguishable from the case at bar. In *Clutterham* v. *Coachmen Industries, Inc.,* supra, the

"[a]ppellant made no showing to the contrary, that this [reduction in force] was pretextual or that respondent acted in bad faith toward him; the motion for summary judgment was therefore properly granted." In the present case, the plaintiff has contended that the reduction in force was a pretext for firing as a result of his conflicts with the director of manufacturing. In *Cox* v. *Resilient Flooring Division of Congoleum Corporation,* supra, the court declared that the plaintiff "does not dispute that there was a legitimate reduction in force. He admits also that his job was eliminated and has not been filled." In the case at hand, the plaintiff has contended that his job was filled by a subordinate, although Posi-Seal maintains that the plaintiff's job was combined with this subordinate's position and that the plaintiff was not qualified to assume the combined position. In *Grayson* v. *American Airlines, Inc.,* supra, it appeared that "[t]he good cause established . . . was an economic downturn in the airline industry caused by the air traffic controllers strike and deregulation. Grayson conceded that such conditions existed in the economy and that they constituted good cause." In the case at bar, the jury, as reflected in its answers to the interrogatories,[5] determined that Posi-Seal had terminated the plaintiff's employment without just cause.

In *Harlan* v. *Sohio Petroleum Co.,* 677 F. Sup. 1021, 1030 (N.D. Cal. 1988), the court rejected the same contention advanced by the defendant and held that a termination pursuant to or because of a reduction in force is not necessarily, as a matter of law, just cause. "It is undisputed that plaintiff was terminated as part of a reduction-in-force (RIF). Sohio argues that a RIF is good cause *per se,* entitling it to summary judgment as a matter of law. However, defendant's cited authorities do not go that far. See *Gianaculas* v. *Trans World Airlines, Inc.,* 761 F.2d 1391 (9th Cir. 1985); *Cox* v.

---

[5] See footnote 2, supra.

*Resilient Flooring Div. of Congoleum Corp.,* [supra]; *Malmstrom* v. *Kaiser Alum. & Chem. Corp.,* 187 Cal. App. 3d 299, 231 Cal. Rptr. 820 (1986); *Clutterham* v. *Coachmen Industries, Inc.,* [supra]. This court does not believe that those authorities establish a *per se* rule that a RIF constitutes good cause. Rather, in each of the cases, summary judgment was granted because the RIF at issue was held to constitute good cause in that particular case." (Emphasis in original.) Id.

In *Flanigan* v. *Prudential Federal Savings & Loan Assn.,* 720 P.2d 257, 261 (Mont. 1986), the Montana Supreme Court held that it was a matter for the trier of fact to determine whether an employee had been terminated as a result of a legitimate reduction in force or because of other factors. "A long-term employee has an expectation of continued employment provided that the employee's work performance is satisfactory. . . . Of course, this does not foreclose an employer from engaging in legitimate reductions in force necessary to maintain the economic vitality of the company. However, there is evidence in this record, from the lips of [a vice-president of the employer], that [the employee] was fired for poor work performance. The jury could have relied upon this latter testimony and therefore concluded there was no reduction in force." Id.

We conclude that the question of whether an employer has terminated an employee because of a legitimate reduction in force or for other reasons is an issue to be determined by the trier of fact. An employer's contention that some employees were terminated as a result of a legitimate reduction in force does not necessarily establish that all employees were discharged for the same reason. An employer may not use a reduction in force as a pretext to terminate other employees in violation of contractual obligations, public policy grounds or statutory rights. See *Graham* v. *Texasgulf, Inc.,* 662 F. Sup. 1451 (D. Conn. 1987) (trier of fact

must determine whether reduction in force was a pretext for employment discrimination in violation of federal statutes); *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980) (wrongful discharge in violation of public policy); *Flanigan* v. *Prudential Federal Savings & Loan Assn.*, supra (wrongful termination in violation of implied contract).

We hold that the court's instructions on termination pursuant to a reduction in force were not erroneous in the circumstances of this case. The court did not explain the "certain circumstances" in which "a termination pursuant to or because of an employee's reduction in work force may be considered just cause." It is well established, however, that individual instructions are not to be judged in isolation from the overall charge. *State* v. *Silano,* 204 Conn. 769, 773, 529 A.2d 1283 (1987). It was clear from the evidence presented at the trial that the plaintiff contended that he had been terminated as a result of his disputes with the director of manufacturing and that the reduction in force was a mere pretext for discharging him. In the case at bar, it is not reasonably possible that the jury was misled by the failure of the trial court to explain under which "certain circumstances" a reduction in force may be a pretext for a termination in violation of an implied agreement not to discharge an employee without just cause. See *State* v. *McDonough,* 205 Conn. 352, 358, 533 A.2d 857 (1987), cert. denied,    U.S.   , 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988).

## IV

The final claim of Posi-Seal is that there was insufficient evidence to permit the jury to find that the plaintiff was terminated for any reason other than a reduction in force. In responding to the interrogatories, the jury answered "yes" to the question of whether the defendant had terminated the plaintiff's

employment without just cause. Posi-Seal contends that the plaintiff was laid off as part of a reduction in force on January 6, 1984, in which forty other employees were discharged, and, therefore, that the plaintiff was terminated for just cause.

The plaintiff, however, introduced evidence from which the jury could reasonably have inferred that he was terminated not because of a legitimate reduction in force, but because of his conflicts with Posi-Seal's director of manufacturing. The plaintiff testified that the president of Posi-Seal, Miller, told him: "Make no mistake. You're not being laid off. You're being fired." The plaintiff also testified that, when he asked the reason for his discharge, Miller replied: "You're off the wall." The plaintiff testified that the director of manufacturing, Ron Walter, had told him that the plaintiff's job was in jeopardy because of conflicts between the quality control and manufacturing departments.

Posi-Seal maintains that the plaintiff's testimony that Miller had told him that he was "fired" is not inconsistent with its position that the plaintiff was terminated as part of a reduction in force. It notes that commentators sometimes employ the term "fired" in relation to terminations pursuant to reductions in force. See, e.g., S. Carley, "At-Will Employees Still Vulnerable," A.B.A.J., October 1, 1987, p. 66. It also contends that Miller's alleged statement that the plaintiff was "off the wall" in no way demonstrates that the plaintiff was terminated as a result of conflicts between the quality and manufacturing departments. It argues that there is no proof that the director of manufacturing's alleged statement that the plaintiff's job was in jeopardy was in any way connected to the plaintiff's termination.

"It is not this court's function to retry any factual issue in this case. *Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.* v. *Cole,* 189 Conn. 518, 524, 457 A.2d 656 (1983)." *Mather* v. *Griffin Hospital,* supra, 147. It was a matter for the trier of fact to determine whether Posi-Seal had just cause to terminate the plaintiff. See id., 130. There was sufficient evidence introduced at the trial from which the jury could have found that Posi-Seal terminated the plaintiff as a result of his conflict with the director of manufacturing. See id. The jury could, therefore, reasonably have concluded that such a termination violated the implied agreement of the parties that the plaintiff would not be discharged as a result of such a dispute so long as he performed his work properly as quality control manager.

We conclude that there was sufficient evidence produced to permit the jury to find that the plaintiff was terminated without just cause, and, therefore, that the court did not err in denying the defendant's motion to set aside the verdict in this regard.

There is no error.

In this opinion the other justices concurred.