[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was brought by the plaintiff, Anushavan G. Torosyan, a/k/a Anouche Thor (Thor), against the defendant Corporation, Boehringer Ingelheim Pharmaceuticals, Inc. (Boehringer) in five counts. Counts one and two allege breach of express contract and breach of implied contract, respectively. Count three alleges wrongful discharge of the plaintiff in violation of public policy. Count four alleges defamation and count five alleges breach of an implied covenant of good faith and fair dealing.
The undisputed facts establish that the defendant is a Delaware Corporation authorized to and doing business in this State.
In April, 1982, the plaintiff, then a resident of California, saw and responded to an employment ad placed by the defendant in a trade journal.
On July 28, 1982, the plaintiff flew to Connecticut at the defendant's expense for a job interview. Subsequently, the defendant offered the plaintiff a position of employment to commence on November 1, 1982. The defendant agreed to pay the plaintiff's costs of relocating his family and home. The expenses included, inter alia, moving fees and mortgage differential payments for three years. On or about November 1, 1982, the plaintiff commenced his employment with the defendant as a Biochemist III. The primary responsibility of the plaintiff was the creation and set up of a radiosynthetic isotope laboratory for the synthesis of certain radioactive products.
On or about May 17, 1985, the defendant terminated the plaintiff's employment citing the plaintiff's act of "having falsified company documents" as the reason.
The issues before the court involve the notice of the plaintiff's CT Page 386 employment, whether employment at will or by an express or implied contract; the propriety of the plaintiff's discharge by the company; and, the claim of defamation made by the plaintiff.
 I
Nature of Plaintiff's Employment Status
The defendant maintains that the plaintiff is an employee-at-will in that he had neither an express or implied contract of employment with Boehringer. As an employee-at-will the plaintiff would be subject to discharge without cause by his employer. Somers v. Cooley Chevrolet,146 Conn. 627, 629 (1959).
At common law, employment contracts of indefinite duration were terminated at will by either party. Somers, supra; Boucher v. Godfrey,119 Conn. 622 (1935). The employer's power to dismiss was considered absolute and the court was discouraged from interfering with what would otherwise be considered appropriate management decisions. Morris v. Hartford Courant Co., 200 Conn. 676, 679 (1986); Sheet's v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 477 (1980).
The plaintiff in the first count, maintains that an express contract of employment existed between the parties, notwithstanding the lack of definitive contract language. In his second count the plaintiff alleges that he had an implied-in-fact contract with the defendant. In support of the claims in both count one and count two, the plaintiff relies upon both the oral representations of agents of Boehringer made to the plaintiff at the time of his initial job interview in Connecticut. He testified that Dr. Keirns, head of biochemistry, promised, "just do a good job and Boehringer will take care of you" after he inquired as to the length of time he could expect to be employed. The plaintiff testified further that on that same occasion, Stuart Rapp, then personnel manager told him, "I hope you will stay forever", in response to the plaintiff's query as to how long he might stay with the Company. Rapp testified he had not made that remark to the plaintiff.
This court has held that a contract implied in fact, like an express contract, depends on actual agreement. D'Ulisse-Cupo v. Board of Directors, Notre Dame High School, 202 Conn. 206, 211n (1987).
The defendant, in its brief, argues that the words "just do a good job and Boehringer will take care of you" and "hope you will stay forever", even if uttered to the plaintiff, do not amount to words or action or conduct which could, arguably, constitute some form of contract commitment. This CT Page 387 court finds that when used as part of an employment interview involving a gainfully employed chemist who was seeking reassurance that a trans-continental relocation would be a worthwhile career move, such words could and did amount to a contractual commitment to the plaintiff that if he took the job he would not be terminated without just cause.
The plaintiff cites the company's Policies and Procedures Manual (May 1981 edition) as further inducement by Boehringer to get the plaintiff to leave his California job and join the defendant Company. The plaintiff claims that the Manual was something he relied upon as he commenced his employment with the defendant. He conceded, however, that the actual document was not made available for his review until the first day of his employment.
The evidence establishes that after negotiations with representatives of the defendant Corporation and upon receipt of a written offer of employment mailed to his California home, the plaintiff terminated his position as senior chemist with California Bionuclear Corporation, sold his home, relocated his family to Connecticut, purchased a home and became obligated on a mortgage. Those facts are material as proof of his reasonable expectations, in light of the promises made to him that special assurance concerning job security was given to him. Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 119 (1988).
The Court further finds that regardless of the value as an inducement to accept a position with the defendant, the Policies and Procedures Manual (1981 edition) was provided to the plaintiff as he commenced his employment and, consequently, he has the right to hold the defendant to the terms and conditions of employment set forth therein.
Based on the evidence, the court cannot find that the plaintiff had an express contract for employment with the defendant and, therefore dismisses count one. The court notes, however, that absent definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties and an inference of fact. Bead Chain Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266, 274-275 (1981).
To prevail on the second count alleging implied contract, the plaintiff had the burden of proving by a fair preponderance of the evidence that the defendant "`agreed to undertake [some] form of actual contract commitment'" to him under which he could not be terminated without just cause. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 212 (1987), as cited in Coelho, supra, 112. CT Page 388
The evidence permits a finding that the defendant made an offer of employment to the plaintiff and during the course of that offer assured him that his employment would be governed by the Policies and Procedures Manual. The evidence is sufficient to permit a further finding that in reliance upon and in consideration for that offer the plaintiff accepted the offer, terminated his existing employment relocated his family across the country and bought a new home, the mortgage on which was, in part, subsidized by the defendant. That evidence is sufficient to permit a finding that the parties had an implied agreement that as long as he performed his job properly, the plaintiff would not be excused except for cause.
The court finds that the plaintiff has met his burden of proof concerning the allegations contained in the second count.
 II
Was the plaintiff properly discharged by the defendant.
The plaintiff has maintained in count two that his discharge was illegal, in bad faith and in breach of his agreement with the defendant.
The allegations of illegality and bad faith are reiterated in the third and fifth counts insofar as they are described as violations of public policy.
Insofar as the issues relate to the alleged violations of public policy, the court makes the following findings and conclusions.
The discharge without cause of an employee who enjoys an implied contract of employment does not, in and of itself, permit a finding of a public policy violation. To prevail on that allegation, the plaintiff must plead and prove that the discharge violated an explicit statutory or constitutional provision or a judicially conceived notion of public policy. Morris v. Hartford Courant Co., 200 Conn. 676, 680 (1986). That burden remains the same in the instant case even though the employee herein has been found to have had an implied contract of employment and is not an employee at will.
For a discharge to be actionable there must be more than an incidental effect on public policy. The defendant's reason for discharging the plaintiff must contravene public policy. Battista v. United Illuminating Co., 10 Conn. App. 486, 497-498 (1987). In that case the plaintiff-employee sought a jury instruction that if it could find that the effect of the employer's action would be to undermine public policy a violation of public CT Page 389 policy could be found. The court refused that request to charge and, instead, required the jury to find that when it discharged the plaintiff the employer intended to frustrate the public policy (energy conservation). Battista, supra, 496. If the jury could not so find, the plaintiff's allegation of public policy violation would fail. (Emphasis supplied.)
While Battista, like Morris, involved an employer at will, the public policy issue did not hinge on the nature of the employment, but rather on the intent of the employer. (Emphasis supplied)
In the instant case the plaintiff has offered extensive evidence and testimony that he was discharged for being a "whistle-blower" over the Company's failure to plan, construct and operate a laboratory for the synthesis of radioactive materials which was safe and in conformity with federal and state regulations and ordinances.
In fact, the evidence establishes that the true reason the plaintiff was discharged is the fact that he grew increasingly disenchanted with his employer's failure to provide him with the laboratory and the supervisory duties he expected to enjoy as the director of such a laboratory. The evidence demonstrates that he was denied his expected promotion, earmarked for an "alternative route for promotion" in a performance appraisal (Plaintiff's Exhibit 18). As his memos documenting the Company's shortcomings in lab design, purchasing, staffing and most adamantly, safety precautions, increased in number and critical comment, so did the intent of management to terminate his responsibilities.
The course of events culminated in the "recommendation" that he attend a seminar in Massachusetts to become familiar with an instrument which he considered to be the tool of a mere lab technician. It was the expense report turned in for reimbursement which is the basis for the plaintiff's discharge — not his persistence in identifying safety hazards. The laboratory was never even used for radioactive synthesis during the balance of his employment and his only contact with radioactive substances was to receive containers of such material and to place them in storage.
Public policy violations by the defendant not having been sufficiently proven by the plaintiff, his claim of retaliatory termination as set forth in count three and his claim of breach of implied covenant of good faith and fair dealing, in violation of public policy, as set forth in count five, must both fail.
The absence of public policy violation does not preclude the plaintiff from proving a bad faith breach of implied contract as alleged in count two or the allegation of defamation of the plaintiff as set forth in count four. CT Page 390
As an employee of Boehringer, the plaintiff had a right, pursuant to that Company's Policies and Procedures Manual, against discharge unless for cause. That agreement was subsequently modified in a 1985 revision to permit the defendant to discharge employees. Conspicuous by its absence was the theretofore requirement "for cause".
The plaintiff was also entitled by the Manual, to access the Company's open door policy. This benefit was especially valuable to the plaintiff in that one of its express purposes was to assist an employee in preparing and presenting his or her case "so that [one] is not put at a disadvantage by a lack of verbal skills or essential information."
In view of the fact that the plaintiff was enrolled in courses to improve his English language skills, which course was paid for by the defendant, availability of the open door policy would be a particular value to the plaintiff. It's denial to him is found to have been a direct consequence of the actions of the defendant's employees and a substantial breach of his implied contract of employment.
Having found, hereabove, that the plaintiff enjoyed an implied contract of employment with the defendant which required some reasonable cause for his termination, the court is not obliged to find a public policy exception to the employment at will doctrine.
As previously noted, the court, while mindful that it should not lightly intervene to impart the exercise of managerial discretion (see Sheets, supra 477), cannot and will not condone or overlook the fact that the true reason this plaintiff was terminated was due to his insistent badgering of his superiors to obtain his contractual rights as he perceived them.
The question of whether an employer has terminated an employee for legitimate reasons or for other reasons is an issue to be determined by the trier of fact. Coelho, supra, 122.
The defendant admitted in its answer to counts two and five that it "terminated the plaintiff's employment" citing as a reason therefor the plaintiff's alleged "having falsified Company documents." (Emphasis supplied.)
The documents alleged to have been falsified were expense account reports generated by the plaintiff's aforementioned seminar in Massachusetts. The evidence raised the issue of the plaintiff's motives and expectations in his submission of an original and then a corrected request for reimbursement by the defendant of funds which the plaintiff paid out of CT Page 391 his own pocket. He was summarily fired by three of his superiors on May 17, 1985, after his revised expense account was submitted and reviewed by his superiors.
It was noted that the initial request for reimbursement, after having been reviewed for errors and/or inappropriate entries, was directed back to the plaintiff through inter-departmental mail. The medium chosen by the agent of the defendant seems to diminish the urgency and gravity of the corporation's concern about the errors or irregularities allegedly contained therein.
Of considerable interest to the court was the testimony of Cassandra Nikituk, the company's Associate Director of Human Resources. While testifying to establish the "business entry" admissibility of a typewritten memo memorializing the meeting which lead to the plaintiff's termination, she conceded that while she had prepared "many, many" such memoranda concerning employee misconduct (T. October 24, 1991, p. 79), less than 20 such memos involved employee termination and none were terminations for falsification of expense reports (T. Oct. 24, 199, p. 92).
When taken in concert with the testimony about the extremely strained employer-employee relations, the claim of the defendant that the plaintiff intentionally falsified his expense report to obtain reimbursement of funds to which he was not entitled loses credibility.
It is clear from the evidence presented that the plaintiff was terminated as a result of his disputes with his supervisors and his travel reimbursement request was a pretext for discharging him.
The court finds for the plaintiff on count two of his complaint.
 III
Did the defendant defame the plaintiff.
The court having found that the defendant falsely attributed the plaintiff's discharge to his falsifying of company documents, and the defendant having admitted such allegation in its answer, the court finds that the plaintiff was defamed as to his professional reputation and that he is entitled to damages for the injury as alleged in count four of his complaint.
The court finds that there was sufficient publication of the allegation both among the several supervisors present at his discharge and by virtue of the written memorandum prepared at the time of his discharge CT Page 392 and placed in his personnel file. Cohen v. Vermidco, 13 CLT 33, p. 834 Aug. 24, 1987.
DAMAGES
Due to the passage of time since the conclusion of evidence and testimony in the above matter, this court is not in a position to determine accurately the extent of the damages incurred by the plaintiff or what success he may have had in mitigating or reducing such damages.
For those reasons, the court having found the defendant liable for the acts complained of in count two and count four, continues this matter for a hearing in damages.
BY THE COURT,
DOHERTY, J.