Kenneth FRANCO, M.D., Plaintiff,

v.

**YALE UNIVERSITY,** in its own capacity and acting through the Yale University School of Medicine; John Elefteriades, M.D.; Gary Kopf, M.D.; and Ronald Merrell, M.D., Defendants.

No. 3:00 CV 1927 GLG.

United States District Court,
D. Connecticut.

Nov. 29, 2002.

Richard A. Cerrato, Bridgeport, CT, Jeffrey M. Duban, New York City, for Plaintiff.

US Court of Appeals, Office of the Clerk, New York City, Notice Only.

Patrick M. Noonan, Brock Thomas Dubin, Delaney, Zemetis, Donahue, Durham & Noonan, Guilford, CT, for Defendants.

## *OPINION*

GOETTEL, District Judge.

This lawsuit arises out of defendant Yale University's refusal to renew the appointment of plaintiff, Dr. Kenneth Franco, as an associate professor of surgery at the Yale Medical School, and the creation of a new cardiothoracic practice group, consisting of faculty and private physicians, during Dr. Franco's last term at the Medical School. This Court has previously dismissed all counts of the amended complaint except the first count, entitled "Breach of Contract," which is asserted only against defendant Yale. *See Franco v.* *Yale University,* 161 F.Supp.2d 133 (D.Conn. Aug.10, 2001). Yale now moves for summary judgment as to this one remaining count [**Doc. # 84**]. For the reasons set forth below, this motion will be GRANTED.

### *Summary Judgment Standard*

The standard for reviewing summary judgment motions is well-established. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The burden of establishing that there is no genuine factual dispute rests with the moving party. *See Gallo v. Prudential Residential Services, Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). In ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of plaintiff, as the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### *Background* [1]

From July 1, 1988, through December 30, 1999, Dr. Franco served as an assistant, then associate, professor in the Cardiothoracic Section of the Surgery Department at the Medical School of Yale University. (Am.Compl.¶ 9.) He was initially appointed to the position of assistant

---

1. A more detailed background of this case is set forth in the Court's ruling on defendants' motion to dismiss, *Franco,* 161 F.Supp.2d 133.

professor for a three-year term, ending June 30, 1991. (Am.Compl.¶ 13.) His second term as assistant professor was also for a three-year period (Am. Compl.¶ 17), followed by his promotion to associate professor for a term of five years, which expired on June 30, 1999.[2] (Am.Compl.¶ 24.) A year into Dr. Franco's third term, Dr. Elefteriades, then chief of the Cardiothoracic Section, wrote Dr. Franco, informing him that "we do not anticipate offering reappointment at the expiration of your present term of appointment" on June 30, 1999. (Am. Compl.¶ 29.) In accordance with this letter, Dr. Franco's appointment was not renewed at the expiration of his third term.[3] However, upon the "urgent entreaty of Dr. Franco," Yale agreed to extend his appointment for a six-month period, until December 30, 1999. (Am.Compl.¶ 66.) On December 31, 1999, Dr. Franco signed a contract to become an associate professor of surgery at the University of Nebraska. (Am.Compl.¶ 67.)

In 1996, during Dr. Franco's last term at the Medical School, a integrated cardiothoracic practice group was formed, consisting of certain Yale University Medical School faculty,[4] as well as physicians from a private cardiothoracic surgery practice. This new practice group was called Cardiothoracic Surgical Associates, P.C. ("the Group"). (Am.Compl.¶¶ 37—39, 71.) Ac-

cording to Dr. Franco, the Group became the primary clinical practice vehicle of the Cardiothoracic Section within the Medical School, thereby effectively "disenfranchis[ing] the remainder of the Section." (Am.Compl.¶¶ 37, 43, 44.) Dr. Franco alleges that this unprecedented action by Yale "unilaterally and materially changed" and the "Terms and Conditions" of his employment at the Medical School. (Am. Compl.¶ 71.)

### *Discussion*

Dr. Franco alleges that, upon his promotion to associate professor of surgery in 1994, he and Yale were required to substantially observe and comply with the terms and conditions and mutual promises of their employment agreement, which were comprised of and understood to be "matters of professional custom and usage reflecting the shared professional training, experience, expectation and purpose of plaintiff and the Medical School representatives upon whose recommendation plaintiff was initially hired." (Am.Compl.¶ 69.) "The Terms and Conditions in effect throughout the first six years of plaintiff's Yale employment ... were to substantially govern the extended, five-year term of plaintiff's reappointment." (Am. Compl.¶ 69.) Dr. Franco complains that Yale failed to perform under these "Terms

---

2. His reappointment was evidenced by a written document which stated:

YALE UNIVERSITY NEW HAVEN CONNECTICUT
At the last meeting of the Corporation, it was voted to make the following appointments:
PROMOTION
School of Medicine
    Kenneth L. Franco, M.D., to Associate Professor–Clinical Track, Surgery (Cardiothoracic), from July 1, 1994 through June 30, 1999
June 25, 1994
_____/s/_____
  SECRETARY

3. The Yale University Faculty Handbook provides that "faculty members on term appointments do not have a right to reappointment or promotion, and decisions on reappointment, like initial decisions on appointment, are subject to the exercise of professional and scholarly judgment by competent University authorities." Yale University Faculty Handbook (Jan.1993) at 16, § III.L.1.

4. While certain physicians who were part of the Cardiothoracic Section became members of this Group, others, including plaintiff, were not included.

and Conditions" by dissolving the section to which he had been appointed and by replacing it in 1996 with the Group. (Am. Compl.¶ 71.) Dr. Franco maintains that this constituted a breach of the "Terms and Conditions" of his employment. (Am. Compl.¶ 71.) He also complains that Yale failed to follow the proper procedures in failing to reappoint him as an associate professor. (*See* Pl.'s Dep. at 60.)

As part of his breach of contract claim, Dr. Franco also alleges that Yale breached an implied covenant of good faith and fair dealing by failing to consider plaintiff's interests when it dissolved the section to which he had been appointed and replaced it with the Group. He also asserts that Yale failed to act to avoid injuring or impairing his right to receive the benefits of his employment and the employment agreement. (Am.Compl.¶¶ 72, 73.)

Yale argues that Dr. Franco cannot prevail on his breach of contract claim, because he never had an agreement with Yale that Yale would refrain from changing the Cardiothoracic Section of the Surgery Department. Additionally, to the extent that he claims that Yale failed to follow the proper procedures with respect to the non-renewal of his appointment, Yale argues that claim is barred by plaintiff's failure to exhaust administrative remedies, citing this Court's earlier decision. *Franco,* 161 F.Supp.2d at 138–39. With respect to his claim for breach of the implied covenant of good faith and fair dealing, Yale contends that, as an at-will employee, he must show a violation of an important public policy, which he has failed to do.

Dr. Franco has responded that he worked for eleven years at Yale under term contracts of three, three, and five years. He characterizes Yale's argument that there was no contract is "frivolous and dilatory." (Pl.'s Mem. at 2.) Although he

concedes that the terms and conditions of his contract were never memorialized, he asserts, in conclusory fashion, that these terms and conditions were mutually understood and agreed to. (Pl.'s Mem. dtd. 6/22/01 at 31.) Where the parties did not clarify various portions of the contract, he maintains, these portions were ascertainable with reference to custom and usage. (Pl.'s Mem. at 33.) With respect Yale's breach of an implied covenant of good faith and fair dealing, Dr. Franco asserts that Yale, by prospectively terminating his employment and forming the Group, breached this covenant by acting in a manner that was contrary to his best interests. He argues that the cases involving at-will employees do not apply, since he was not an at-will employee, and, therefore, there is no requirement that he demonstrate a violation of an "important public policy."

### 1. *Defendant's Failure to Comply with Proper Procedures*

■ To the extent that Dr. Franco is claiming that Yale failed to follow proper procedures in denying him reappointment, we quickly dispose of that claim. This Court has already held that this is an issue covered by the Faculty Handbook, and, therefore, is a matter on which Dr. Franco was required to exhaust available administrative remedies, which he failed to do. *See Franco,* Decision on Motion for Reconsideration dtd. 10/02/01 at 2, and Decision on Motion to Dismiss, 161 F.Supp.2d at 138; *see also Neiman v. Yale University,* No. X04CV970120725S, 2002 WL 31506040, at *1–2 (Conn.Super. Oct. 29, 2002) (holding that plaintiff, who complained about defendant's failure to offer her a tenured faculty appointment, was required to exhaust available administrative remedies set forth in the faculty handbook, before suing for damages, whether her claims sounded in tort or contract. "A

party may not choose his administrative remedy through the framing of his complaint.").

## 2. Breach of Contract

■ The primary basis for Dr. Franco's breach of contract claim is Yale's failure to perform under the "Terms and Conditions" of his employment contract by dissolving the Cardiothoracic Section and replacing it with the Group. (Am. Compl.¶ 71.) In order for Dr. Franco to prevail on this breach of contract claim, Dr. Franco has the burden of proving by a fair preponderance of the evidence that Yale agreed, either by words or action or conduct, to undertake some form of actual contractual commitment to him under which Yale would not permit the formation of an integrated practice group such as the Group, or that it would not change the operation of the Cardiothoracic Section. *See Coelho v. Posi–Seal International, Inc.,* 208 Conn. 106, 112, 544 A.2d 170 (1988). "All employer-employee relationships not governed by express contracts involve some type of implied contract of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working." *Gaudio v. Griffin Health Services Corp.,* 249 Conn. 523, 532, 733 A.2d 197 (1999) (citing 1 H. Perritt, *Employee Dismissal Law and Practice* at 326, § 4.32 (3d ed.1992)) (internal citations and quotations marks omitted). However, a "contract implied in fact, like an express contract, depends on actual agreement." *Coelho,* 208 Conn. at 111, 544 A.2d 170 (internal citations and quotation marks omitted). "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." *Finley v. Aetna Life & Casualty Co.,* 202 Conn. 190, 199, 520 A.2d 208 (1987), *overruled on other grounds by Curry v. Burns,* 225 Conn. 782, 789, 626 A.2d 719 (1993) (internal citations and quotation marks omitted).

The difficulty that we have with this breach of contract claim is that Dr. Franco has failed to produce one shred of evidence to support his claim that he had an agreement with Yale, whether written or oral, express or implied, that Yale would not allow the formation of an integrated practice group of Medical School physicians and private physicians or that Yale would not make changes within the Cardiothoracic Section. Indeed, we have nothing more than unsubstantiated, conclusory assertions that there was a breach of unspecified "Terms and Conditions" of his employment.

Dr. Franco testified that he never had a written contract with Yale, although he did have written appointments and reappointments for definite terms. (Pl.'s Dep. at 49.) He testified that his salary was negotiated on a yearly basis, based upon factors such as duties, responsibilities, services, how the section performed, the amount of money that brought in, and other factors. (Pl.'s Dep. at 32, 50–51.) He admitted that he does not recall any specific conversations, at the time he was first.hired and when he was reappointed, about whether there would be any changes in the Division of Cardiothoracic Surgery during his tenure at Yale. (Pl.'s Dep. at 81–83.) Dr. Franco conceded, "No one division is static. There's constantly changes, but no one sits down and predicts what those changes are going to be." (Pl.'s Dep. at 83.) In fact, he admitted that he knew in a general way that there might be changes within the Division of Cardiothoracic Surgery, but he did not know when they might occur or what they might be. (Pl.'s Dep. at 83–84.)

Additionally, Dr. Franco admitted in his deposition that the Cardiothoracic Section

was never dissolved. In fact, he remained a member of that Section throughout his appointments at Yale, as did several other doctors, following the formation of the Group. (Pl.'s Dep. at 69.)

After a careful review of the record, and construing all facts in favor of the plaintiff as the non-moving party, we find no evidence whatsoever to support Dr. Franco's claim that Yale undertook any form of contractual commitment to him that was breached by virtue of the formation of the Group. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–26, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that summary judgment for defendant-movant was proper where the movant demonstrated the absence of any substantial evidence in the record to support an essential element of plaintiff's case); *see also Taylor v. Phylis Bodel Childcare Center,* No. CV 950377237, 1996 WL 434397, at *3 (Conn.Super. July 10, 1996) (holding that plaintiff's conclusory allegations, unsupported by facts, that she entered into an oral contract with her employer by which she could not be terminated without cause, were insufficient to sustain an implied contract claim).

Once the movant carries its initial burden of production, the party opposing a motion for summary judgment must substantiate his claim by identifying for the Court specific facts, supported by evidence, affidavits, depositions, interrogatories, or other material contemplated by Rule 56(e), that demonstrate the presence of a genuine issue requiring trial. Dr. Franco has failed to adduce any evidence

whatsoever that could enable a reasonable trier of fact to conclude that any "term or condition" of a contract between Yale and him was breached by virtue of the formation of the Group. *See 11 Moore's Federal Practice* §§ 56.11[1][b], 56.13[2] (3d ed.2002). It is not enough for the opposing party to rely upon mere allegations or denials of the adverse party's pleadings to overcome summary judgment. *Id.* at § 56.13[2]. "Rule 56(e) mandates the entry of summary judgment against the nonmovant who fails to prove the existence of a genuine issue for trial." *Id.*

Accordingly, because Dr. Franco has failed to produce any evidence to establish the existence of a genuine issue for trial on his breach of contract claim, summary judgment is granted in favor of Yale on that aspect of count one of his amended complaint.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

As noted, subsumed within count one, entitled "Breach of Contract," is a claim for breach of the implied covenant of good faith and fair dealing. Under Connecticut law, "the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Hoskins v. Titan Value Equities Group, Inc.,* 252 Conn. 789, 793, 749 A.2d 1144 (2000) (citing *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 566, 479 A.2d 781 (1984)). Connecticut imposes this duty of good faith and fair dealing in the context of employment contracts, as well.[5]

---

**5.** The Connecticut courts have held that absent a showing that an employee's discharge involved an impropriety which contravenes some important public policy, an at-will employee may not challenge his or her dismissal based upon an implied covenant of good faith and fair dealing. *Carbone v. Atlantic Richfield Co.,* 204 Conn. 460, 470–71, 528 A.2d

1137 (1987); *Thibodeau v. Design Group One Architects, LLC,* 260 Conn. 691, 697 n. 7, 802 A.2d 731 (2002). We need not address the applicability of the "public policy" requirement to the facts of this case because (1) it is not clear from the record before us whether Dr. Franco was an at-will employee or whether he could only be terminated for just cause

*Magnan,* 193 Conn. at 568–69, 479 A.2d 781. The purpose of allowing such claims is "to fulfill the reasonable expectation of the contracting parties." *Id.* at 567, 479 A.2d 781.

■ An action for breach of the covenant of good faith and fair dealing requires proof of three essential elements: first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith. *Fairfield Financial Mortgage Group, Inc. v. Salazar,* No. CV000339752S, 2002 WL 1009809, at *3 (Conn.Super. Apr. 23, 2002).

■ Plaintiff's claim for breach of an implied covenant of good faith and fair dealing fails for several reasons. First, as discussed above, plaintiff has failed to produce any evidence of a contract, whether express or implied, that created a reasonable expectation in plaintiff that there would not be any changes within the Cardiothoracic Section during the term of his appointment. The only evidence of a written contract that plaintiff has provided are the notices of his appointment, reappointment, and promotion. Although he has alluded to the "terms and conditions" of these appointments, he has failed to proffer any evidence that would support a reasonable expectation on his part that would prohibit formation of the Group.

during the term of his appointment; and (2) Dr. Franco was not terminated; instead, his

In the *Hoskins* case, cited above, the plaintiff claimed that her securities broker and his brokerage firm breached the implied duty of good faith and fair dealing by virtue of the poor investment advice they provided to her. During her depositions, plaintiff twice denied having any type of contract with the defendants. Later, she attempted to recant this testimony by a sworn affidavit, in which she asserted that she never meant to indicate or imply that her business relationship with the defendants was not based in contract. The Supreme Court held that a "conclusory assertion that the relationship was 'based in contract' [did] not constitute evidence sufficient to establish the existence of a disputed material fact for purposes of a motion for summary judgment." *Id.* at 793–94, 749 A.2d 1144. Accordingly, the Court upheld the grant of summary judgment in defendants' favor.

Second, Dr. Franco has failed to proffer any evidence of bad faith on the part of Yale. "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.... Bad faith means more than mere negligence; it involves a dishonest purpose." *Habetz v. Condon,* 224 Conn. 231, 237, 618 A.2d 501 (1992) (internal citations and quotations omitted); *see also Daley v. Wesleyan University,* 63 Conn.App. 119, 133 n. 18, 772 A.2d 725 (a case involving a faculty member denied tenure), *cert. denied,* 256 Conn. 930, 776 A.2d 1145 (2001). In this case, plaintiff has failed to adduce any evidence to show that Yale was acting with a dishonest purpose with respect to

appointment was not renewed.

the formation of the Group. Therefore, we hold that there are no genuine issues of material fact and that Yale is entitled to summary judgment on Dr. Franco's claim of breach of an implied covenant of good faith and fair dealing.

### Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment [**Doc. # 84**] is GRANTED. All counts of plaintiff's amended complaint having been disposed of as to all defendants, the Clerk is directed to enter judgment in favor of the Defendants and to close this file.

SO ORDERED.