[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO STRIKE (#130,#136, #137)
On February 14, 1996, the plaintiff, MaryLou Centi, filed an eight-count complaint arising out of the termination of her employment with Bentley Gardens Convalescent Home (Bentley Gardens), where she had been employed since 1972. The defendants are Beverly Enterprise — Connecticut, Inc. (Beverly), who managed Bentley Gardens through June 30, 1995; Lexington Health Care Center (Lexington), who took over the management of Bentley Gardens on July 1, 1995; and Mark S. Barwise, the Administrator of Bentley Gardens since 1987.
The factual allegations concerning her employment are as follows. Centi began working at Bentley Gardens as a registered nurse on November 1, 1972 (Count 1, ¶ 5). Her performance evaluations were generally above average and she was promoted several times, becoming Assistant Director of Nursing in 1990 (Count 1, ¶¶ 6-9). On May 24, 1995, Barwise, knowing that Lexington was scheduled to take control on June 1, gave her, without any prior notice or indication, a 30-day notice of CT Page 6038 termination unless certain performance goals were met, primarily the documentation of daily monitoring of the staff nurses under her supervision, with which she complied (Count 1, ¶ 16). The planned takeover by Lexington was rescheduled for July 1 (Count 1, ¶ 19). On June 22, Barwise extended her review period until July 28 (Count 1, ¶ 24). On July 2, the Sunday before Lexington was to begin operations, Barwise delivered to Centi's home a notice that Lexington would not be renewing her employment when it took over management of the facility (Count 1, ¶ 25).
Centi's revised and amended complaint, filed June 7, 1996, contains the following counts: 1) breach of implied contract, 2) breach of the covenant of good faith and fair dealing, 3) intentional infliction of emotional distress, 4) negligent infliction of emotional distress, 5) defamation, 6) mis-representation, 7) successor liability, and 8) interference with contractual and business relations.
On July 19, 1996, Lexington filed a motion to strike counts one, two, three, four, six, and seven. Centi filed a memorandum in opposition to Lexington's motion to strike on October 16, 1996. Beverly filed a motion to strike counts one, two, three, six and eight on October 17, 1996. Barwise filed a motion to strike counts three, six and eight on October 28, 1996. Centi filed memoranda in opposition to Beverly's and Barwise's motions to strike on January 22, 1997. The court heard argument on January 27, 1997.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Waters v.Autuori, 236 Conn. 820, 825, 676 A.2d 357 (1996). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Id. A motion to strike "admit all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings."Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 398 (1985). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Id. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged."Novametrix Medical Systems v. BOC Group, Inc., 224 Conn. 210,215, 618 A.2d 25 (1992). CT Page 6039
I. Breach of implied contract (Count 1)
In the first count, directed only at Beverly and Lexington, Centi claims that she had an implied contract of employment under which she could only be discharged for just cause. She also claims that both Beverly and Lexington had impliedly promised that her employment would not be affected by the change in management, and thus her discharge was without just cause.
Beverly argues that Centi was an at-will employee, and that she has not alleged sufficient facts to support a claim for an implied contract that was breached by her termination. Beverly claims that all of its employees were terminated at the time it transferred control to Lexington, and that Beverly had no control over Lexington's hiring of employees. Lexington argues that Centi was never employed by Lexington, and thus no contract of employment could have existed between them.
At issue is whether the plaintiff had an employment contract that would limit the situations under which her employment could be terminated. "[A]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., 234 Conn. 1, 14, 662 A.2d 89
(1995). "An employer may terminate the employment of an employee at will for a good reason, a bad reason, or no reason at all." (Internal quotation marks omitted.) Dunn v. NPM HealthcareProducts, Inc., Superior Court, judicial district of New London, Docket No. 530682 (June 15, 1995, Hurley, J.). Unless the employer and employee agree to an employment contract on other terms, the employee remains an employee at will subject to termination at any time. Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 562-63, 479 A.2d 781 (1984). An agreement for "permanent" employment is not, by itself, sufficient to remove the employee from at-will status. Fleming v. Sedgwick James ofConn., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 541429 (August 11, 1995, Corradino, J.); see also Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,474, 427 A.2d 385 (1980); Fisher v. Jackson, 142 Conn. 734, 736,118 A.2d 316 (1955).
There have been exceptions to the general rule regarding the termination of at-will employees when the court has found implied employment contracts terminable only for cause. Coelho v.Posi-Seal International, Inc., 208 Conn. 106, 116-19, 544 A.2d 170
CT Page 6040 (1988). "In order to alter the common law employment `at will' relationship, it is necessary to demonstrate a deliberate substitution of an employment policy which must be based upon specific representations rather than expressions of intentions with regard to future employment." Kelley v. United States ShoeCorp., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 042492 (November 5, 1993, Rush, J.), citingD'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 214-16, 520 A.2d 217 (1987). "[U]nder appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee."Carbone v. Atlantic Richfield Co., 204 Conn. 460, 471,528 A.2d 1137 (1987).
To prevail on her claim for breach of an implied employment contract, the plaintiff has the burden of proving by a fair preponderance of the evidence that the defendant "agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment" to the plaintiff under which she "could not be terminated without just cause." (Internal quotation marks omitted.) Coelho v. Posi-Seal International, Inc., supra,208 Conn. 112. "A contract implied in fact, like an express contract, depends on actual agreement." (Internal quotation marks omitted.) Id., 111. "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were." (Internal quotation marks omitted.) Finley v. Aetna Life Casualty Co., 202 Conn. 190,199, 520 A.2d 208 (1987), overruled on other grounds by Curry v.Burns, 225 Conn. 782, 789, 626 A.2d 719 (1993). "Absent . . . definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,
supra, 234 Conn. 15.
Centi alleges first that by virtue of the Employee Handbook and representations of company policy, Beverly promised not to terminate her except for just cause and according to certain procedures (¶¶ 32, 33). She identifies two documents as the source of this contractual promise: a policy statement she was given in 1980 that provided for permanent employment once an initial probation period had passed (¶ 28), and an Employee Handbook she received in 1987 that provided for disciplinary proceedings prior to termination (¶ 29). Whether Beverly intended to alter the at-will relationship by these CT Page 6041 representations of policy is a question of fact that cannot be decided on a motion to strike. See Byrum v. Pratt WhitneyAircraft, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 509063 (June 1, 1994, Corradino, J.) (motion to strike denied because allegations supported an agreement to follow certain procedures).
Centi must also show that she was, in fact, terminated without just cause. Coelho v. Posi-Seal International, Inc.,
supra, 208 Conn. 120-21. She alleges that Beverly impliedly promised her that she would not be terminated as a result of Lexington's takeover of the management of the hospital (¶ 35). She alleges that this promise is evidenced by the memoranda to her from Barwise concerning her initial 30-day probation and its extension for another 30 days, both of which extended beyond the expected date of the takeover (¶¶ 10, 16, 36), and two representations made by Barwise, the first to People's Bank on March 29, 1995, that the probability of her continued employment at Bentley Gardens was excellent (¶ 14), and the second on April 18, 1995, to the Department of Health, which included Centi's name on a list of those that Barwise believed would be on the staff once Lexington became the licensee for the facility (¶ 15). Centi further alleges that the reason she was given for her termination was pretextual because no other Beverly employee was subjected to the termination/rehiring process that Beverly gave as the reason for Centi's discharge (¶ 26, 38). These allegations are sufficient to support her claim that she was discharged without just cause.
Finally, Centi alleges that the agreement between Lexington, Beverly, and the owner of the facility concerning the transfer of management shows that Lexington intended to maintain the same staff as Beverly had (¶ 26). She alleges that Barwise, as agent for Lexington, made representations that she would be part of the staff after the management was assumed by Lexington, and, as the agent of Lexington, Barwise controlled whether she would continue working after the takeover (¶ 38). She alleges also that her final paycheck was distributed to her by Lexington (¶ 27). These allegations support her claim that Lexington had impliedly agreed to employ her after assuming control of Bentley Gardens.
The plaintiff alleges sufficient facts to support her claim for breach of implied contract by both Beverly and Lexington. Accordingly, the motions to strike count one of Lexington and CT Page 6042 Beverly are denied.
II. Breach of the covenant of good faith and fair dealing (Count 2)
In the second count, also directed at Beverly and Lexington, Centi claims that her termination constitutes a breach of the implied covenant of good faith and fair dealing. Lexington and Beverly move to strike the second count on the basis that there cannot be a violation of this covenant, because there is no enforceable contract. As to count one the court has already concluded that the allegations are sufficient to support a claim of an implied contract.
The covenant of good faith and fair dealing is "a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Magnan v.Anaconda Industries. Inc., supra, 193 Conn. 567. Since she has alleged a contract with terms other than at-will, the covenant of good faith and fair dealing is relevant. "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon,224 Conn. 231, 238, 618 A.2d 501 (1992). "Bad faith means more than mere negligence; it involves a dishonest purpose." Id., 237.
Centi alleges that during the course of her probation, Barwise set impossible goals for her to achieve and refused to meet with her to discuss how she could further improve her performance, and did not permit her to complete the time allotted to her for improvement (¶¶ 23, 24, 25). She also alleges that the reason actually given her for termination was pretextual, because she was the only employee of Beverly not transferred to Lexington (¶ 26).
These allegations are sufficient to support a claim of bad faith and dishonest purpose. Accordingly, the motions to strike count two of Lexington and Beverly should be denied.
III. Intentional infliction of emotional distress (Count 3)
In the third count, against all three defendants, Centi claims that the defendants' conduct in terminating her amounted CT Page 6043 to intentional infliction of emotional distress. The three defendants move to strike this count on the ground that the conduct alleged is not sufficiently extreme or outrageous. They argue that the only misconduct alleged is that Barwise said she would retain her job if she met certain performance goals, but then terminated her without cause after she met them. The plaintiff argues in response that she has alleged several acts on the part of Barwise beyond his discharge of her that constitute extreme and outrageous behavior.
In order to establish a cause of action for intentional infliction of emotional distress, the following four elements must be alleged: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807
(1991). "`Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . .'" Mellaly v. Eastman Kodak Co.,42 Conn. Sup. 17, 20, 597 A.2d 846 (1991), quoting 1 Restatement (Second) of Torts § 46, comment (d).
"Extreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress. . . . Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice." (Citations omitted.) Brown v.Ellis, 40 Conn. Sup. 165, 167, 484 A.2d 944 (1984). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort." (Citations omitted; internal quotation marks omitted.)DeLaurentis v. New Haven, supra, 220 Conn. 267. "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." Mellaly v.Eastman Kodak Co., supra, 42 Conn. Sup. 18. CT Page 6044
Those cases in the employment context that have granted motions to strike because the allegations do not sufficiently describe "extreme and outrageous" behavior are more often those that allege little more than that the plaintiff was terminated without just cause. Emanuele v. Boccaccio Susanin, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 379667 (December 12, 1994, Wagner, J.) (at-will employee alleged that she was terminated, in part, for false and non-existent reasons in order to intentionally deprive her of benefits and compensation and in contravention of the defendant's performance procedure); Neuharth v. Conn. Institute for theBlind, Superior Court, judicial district of Tolland, Docket No. 42975 (March 8, 1991, Dunn, J.) (employer's discharge of plaintiff, despite oral assurances that she would not be discharged, does not rise to level of extreme and outrageous conduct); Barbuto v. The William Backus Hospital, Superior Court, judicial district of New London, Docket No. 105452 (April 13, 1995, Hendel, J.) (employer's removal of employee from desirable work assignment and disciplining her not extreme and outrageous);Diemond v. American Red Cross, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533021 (January 9, 1995, Hennessey, J.) (defendant allegedly failed to respond adequately to plaintiff's grievances).
In the present case, Centi alleges more than that Barwise merely terminated her after indicating that she could retain her job if she met certain goals. As discussed previously, Centi alleges numerous actions on the part of the defendants beyond discharging her. For example, she alleges that Barwise changed her work assignments and set unrealistic goals for her, came to her house on Sunday, and gave her a pretextual reason for the termination. Reasonable minds can differ on whether this conduct, if proven, rises to the necessary level. These allegations are sufficient to allege a cause of action for intentional infliction of emotional distress. Accordingly, the motions to strike count three of Lexington, Beverly, and Barwise are denied.
IV. Negligent infliction of emotional distress (Count 4)
In the fourth count, against all three defendants, Centi claims that the defendants' conduct in terminating her amounted to negligent infliction of emotional distress. Although this count is directed at all three defendants, only Lexington has moved to strike it. Lexington claims that Centi's allegations fail to include any facts, beyond the discharge itself, to show CT Page 6045 that Lexington should have anticipated that its conduct was likely to cause distress or illness. Centi argues that she has sufficiently pleaded the elements necessary to set forth a cause of action for negligent infliction of emotional distress.
"In Montinieri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978), [the Connecticut Supreme Court] first recognized a cause of action for `unintentionally-caused emotional distress' and held that recovery did not `depend on proof of either an ensuing physical injury or a risk of harm from physical impact.' [The court] concluded, however, that the plaintiff does have the burden of pleading and establishing that `the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.'" Morris v. Hartford Courant Co., 200 Conn. 676, 683,513 A.2d 66 (1986).
"Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." (Internal quotation marks omitted.) Lund v. Stern Company, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463413 (April 4, 1995, Stengel, J.). See also Dunn v. NPMHealthcare Products, Inc., Superior Court, judicial district of New London, Docket No. 530682 (August 24, 1994, Leuba, J.). The mere termination of employment, even if wrongful, is not enough to sustain a claim for negligent infliction of emotional distress; such a claim must be accompanied by additional allegations of unreasonable conduct which occurred during the termination process or at the time of discharge. Chieffalo v.Norden Systems, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 127694 (November 10, 1994, Lewis, J.); Skierkowski v. Creative Graphics Services,Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463242 (May 5, 1995, Handy, J.).
Centi alleges, in addition to the fact of termination, that Barwise, allegedly acting as agent for Lexington, told other department heads, prior to informing Centi herself, that her performance was inadequate and that she would be given notice of termination (¶ 16), told her that he would set unreasonable goals that she could never meet (¶ 23), and delivered the termination notice to her home on a Sunday (¶ 25). These allegations are sufficient to support a claim that the defendants CT Page 6046 acted unreasonably, with a risk of causing emotional distress.
The plaintiff has adequately alleged negligent infliction of emotional distress. Accordingly, Lexington's motion to strike count five should is denied.
V. Misrepresentation (Count 6)
In the sixth count, Centi alleges that the defendants made misrepresentations to her about her future employment prospects, which she relied upon to her detriment. All three of the defendants move to strike the count on the ground that she must plead more than that she worked hard at her assigned duties to show detrimental reliance. Centi, relying on D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, supra,202 Conn. 206, argues that she need only plead that she relinquished her ability to apply for and obtain other employment.
A remedy for misrepresentation is considered to be independent of a remedy on a contract. Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 579, 657 A.2d 212 (1995). Thus, a defendant who is not liable for representations based on contract or promissory estoppel can, nonetheless, be liable in tort for negligent misrepresentation. D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, supra, 202 Conn. 218-19.
"An actionable misrepresentation, whether made knowingly, recklessly, negligently or innocently, must be made for the purpose of inducing action upon it." J. Frederick Scholes Agencyv. Mitchell, 191 Conn. 353, 359, 464 A.2d 795 (1983). "Although the general rule is that a misrepresentation must relate to an existing or past fact, there are exceptions to this rule, one of which is that a promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation." Paiva v. Vanech Heights Construction Co.,159 Conn. 512, 515, 271 A.2d 69 (1970).
Centi alleges that Barwise made false statements regarding her future employment in the two memoranda regarding the monitoring of her performance and that none of the defendants had any intention of continuing her employment at the time he made these representations (¶¶ 33, 35). She also alleges that although he told her that she was being discharged because all Beverly employees were being terminated, no other Beverly employee was subjected to this treatment (¶ 26). She further CT Page 6047 alleges that the statements were made to induce her to act on them by working hard to enable Beverly to pass the Health Dept. inspection and that she did indeed rely and act on these representations (¶¶ 34, 36). Construing these allegations in the light most favorable to the plaintiff, they sufficiently allege that the representations made to her induced her to continue her employment and try to meet the performance goals set for her, and that she suffered injury during the periods her performance was being monitored. See Teifer v. SonitrolCommunications Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 359856 (August 7, 1990, Freed, J.) (continuing in employment sufficient to allege detrimental reliance); see also D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, supra, 202 Conn. 217 n. 5 (allegation of forbearance sufficient to plead detrimental reliance).
The plaintiff has stated a legally sufficient claim for misrepresentation. Therefore, the motions to strike count six of Lexington, Beverly and Barwise are denied.
VI. Successor liability (Count 7)
In count seven, against Lexington only, Centi alleges that Lexington is the corporate successor to Beverly, and is thus liable for the damages resulting from Beverly's actions. Lexington moves to strike the seventh count on the basis that it does not adequately allege that the successor agreement between Lexington and Beverly provides for the assumption of any liability on the part of Lexington for Beverly's actions. Centi argues that it is sufficient to allege that Lexington impliedly assumed the liabilities of Beverly in regard to employment matters and that Barwise, who was responsible for staffing decisions for both entities, made promises on behalf of them both regarding the transfer of employees. Centi also argues that successor liability is appropriate because the two entities conspired to terminate her in violation of her contractual rights.
"[A] successor corporation is not liable for the debts and liabilities of its predecessor unless: 1) the purchase agreement expressly or impliedly so provides; 2) there was a merger or consolidation of the two firms, see General Statutes § 33-369 (e); 3) the purchaser is a `mere continuation' of the seller; or 4) the transaction is entered into fraudulently for the purpose CT Page 6048 of escaping liability." Copperthite v. Pytlik, Superior Court, judicial district of Middlesex, Docket No. 59053 (August 29, 1992, Arena, J.).
Centi alleges that Lexington and Beverly agreed to continue all employees under the same terms and conditions and that all other Beverly employees continued with Lexington without undergoing a process of termination and rehiring (¶ 26). She also alleges that her final paycheck was issued to her by Lexington, not Beverly, and that her termination did not take effect until after the takeover by Lexington (¶ 27).
These allegations are sufficient to withstand a motion to strike, and Lexington's motion to strike count seven is denied.
VII. Intentional interference with contractual relations and business expectancies (Count 8)
In count eight, directed at Beverly and Barwise, Centi claims that they tortiously interfered with her contractual relations and business expectancies with Lexington. Beverly and Barwise argue that the plaintiff has not alleged the requisite improper motive.
The Connecticut courts have "long recognized a cause of action for tortious interference with contract rights or business relations." Kelley Property Development, Inc. v. Lebanon,226 Conn. 314, 340 n. 30, 627 A.2d 909 (1993). While the cases "have not focused with particularity on what acts of interference are tortious . . . [the courts] have made it clear that not every act that disturbs a contract or business expectancy is actionable."Blake v. Levy, 191 Conn. 257, 260, 464 A.2d 52 (1983). "[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . [A]n action for intentional interference with business relations requires the plaintiff to plead and prove at least some improper motive or improper means."Kelley Property Development, Inc. v. Lebanon, supra,226 Conn. 340 n. 30. "[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 536, 546 A.2d 216
(1988). CT Page 6049
"In determining whether the interference is improper, it may become very important to ascertain whether the actor was motivated in whole or in part by a desire to interfere with the other's contractual relations. If this was the sole motive the interference is almost certain to be held improper. A motive to injure another or to vent one's ill will on him serves no socially useful purpose given these guidelines." Dowling v. FirstFederal Bank, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533172 (June 30, 1995, Corradino, J.), citing the Restatement (Second) of Torts § 767, comment (d). Centi alleges that the defendants had no "proper or legitimate business justification for the interference" and acted with "improper motive" (¶ 129). Such an allegation is sufficient to withstand the motion to strike of Beverly.
Barwise argues further, however, that this claim against him must be stricken because the plaintiff alleges that he was acting as Lexington's agent, and as such he cannot be held to have interfered with a contract or relationship between his principal and the plaintiff. "It is well settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties." (Citations omitted; internal quotation marks omitted.)Espinosa v. Connecticut College, Superior Court, judicial district of New London, Docket No. 522872 (June 27, 1994, Leuba, J.); see also Shelby v. Pelletier, 1 Conn. App. 320, 327 n. 4,472 A.2d 1285 (1984) ("[T]he general rule is that the agent may not be charged with having interfered with a contract of the agent's principal.") "An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract. . . . An agent, however, can be held liable for such interference or inducement if he did not act legitimately within the scope of his duty but used the corporate power improperly for personal gain." (Citation omitted.) Murrayv. Bridgeport Hospital, 40 Conn. Sup. 56, 60-61, 480 A.2d 610
(1984, Cioffi, J.).
In her complaint, Centi does allege that Barwise was acting as Lexington's agent at several points during her probation and termination (¶¶ 15, 24, 25, 30). She also alleges many actions on the part of Barwise not specifically alleged as being in his CT Page 6050 capacity of agent, such as his reassignment of her duties prior to her termination (¶ 21), his setting of goals for to achieve (¶ 23), and his choice of delivering the termination notice to her home (¶ 25). Such actions could be construed as arising out of personal animosity, which would take them outside the scope of his agency. Whether Barwise was acting as agent for Lexington at all times is a question of fact. Hallas v. Boehmkeand Dobosz, Inc., 239 Conn. 658, 674, ___ A.2d ___ (1997);Beckenstein v. Potter and Carrier, Inc., 191 Conn. 120, 133,464 A.2d 6 (1983). Since the determination of whether the plaintiff has adequately made out a claim for interference with business expectancy or contractual relations depends on the resolution of the question of agency, it cannot be decided on a motion to strike.
The eighth count alleges adequate facts to support a claim of interference with business expectancies. Accordingly, the defendants' motions to strike this count is denied.
Joseph A. Licari Jr., Judge