[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE MOTION FOR SUMMARY JUDGMENT FILED BY THE DEFENDANT HUBBELL, INC.
 I STATEMENT OF THE CASE
On April 16, 1998, the plaintiff, Joseph J. Firgeleski, Jr., filed a five count complaint against the defendant, Hubbell, Inc. In the first count of the complaint, the plaintiff asserts that the defendant breached an express or implied employment contract by terminating his employment. In the second count, the plaintiff asserts that the defendant, by discharging him, breached the implied covenant of good faith and fair dealing imposed upon it by the employment contract.
In the third count, the plaintiff alleges a cause of action against the defendant for negligent misrepresentation on the ground. that the representations the defendant made to him regarding the security of his employment were false. In the fourth count, the plaintiff alleges that the defendant's conduct intentionally inflicted emotional distress upon him. Lastly, in the fifth count, the plaintiff claims that the defendant is liable for negligent infliction of emotional distress.
On June 25, 1998, the defendant filed a motion to strike all counts of the complaint. On February 25, 1999, the court, Melville, J., granted the defendant's motion to strike the first, second, fourth and fifth counts. The plaintiff subsequently filed an amended complaint on March 12, 1999, asserting the same causes of action as in the original complaint.
The plaintiff alleges the following facts in the amended complaint. The plaintiff began to work for the defendant in 1960, first in the stock room, and then, as master scheduler. During the course of his CT Page 16824 employment, the defendant's agents informed the plaintiff that his job was secure and that his job would continue absent just cause for its termination. The plaintiff alleges that these representations constitute a contract of employment. On February 15, 1996, the defendant terminated the plaintiff's employment, allegedly for lack of work and because it had eliminated his position. The plaintiff claims that, contrary to the defendant's statements, his job responsibilities were not eliminated.
The defendant filed its answer to the amended complaint on December 9, 1999, asserting the following affirmative defenses: failure to state a claim, failure to mitigate damages, collateral estoppel and res judicata. The pleadings were closed on June 1, 2000.
On March 9, 2001, the defendant filed the present motion for summary judgment as to all counts of the amended complaint. The plaintiff filed an objection to the motion on August 3, 2001. Both parties filed memoranda, affidavits and documents in support of their positions. During oral argument on the motion for summary judgment, the plaintiff was given the opportunity to file a reply memorandum by August 20, 2001. On that date, the defendant filed a statement indicating that it would not file a reply memorandum and would rely on its existing filings and oral presentations. On August 28, 2001, the plaintiff moved to file a supplemental memorandum. This motion was granted by the court on December 7, 2001.
 II DISCUSSION A LAW OF THE CASE
In support of its motion, the defendant first argues that the allegations of the amended complaint are substantially the same as those in the original complaint, and therefore, the "law of the case" requires the granting the motion for summary judgment as to counts one, two, four and five. As noted above, on February 25, 1999, the court, Melville, J.,
granted the defendant's motion to strike these counts of the original complaint. Although the court will look to the ruling on the motion to strike as authority on the legal issues presented, for the following reasons this ruling is not dispositive of the issues presented by the motion for summary judgment.
"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different CT Page 16825 situations in which it may be invoked." (Internal quotation marks omitted.) Carothers v. Capozziello, 215 Conn. 82, 107, 574 A.2d 1268
(1990). "The law of the case expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power." (Internal quotation marks omitted.) McCarthy v. McCarthy,55 Conn. App. 326, 332, 752 A.2d 1093 (1999), cert. denied, 252 Conn. 923,752 A.2d 1081 (2000). "[N]ew pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . Where a matter has been previously ruled upon interlocutorily, the court in a subsequent proceeding may treat that decision as the law of the case. . . ." Id., 334.
It is also true, however, that "[a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . This principle has been frequently applied to an earlier ruling during the pleading stage of a case. . . . According to the generally accepted view, one judge may, in a proper case, vacate, modify or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citations omitted, internal quotation marks omitted.)Westbrook v. Savin Rock Condominiums Assn., 50 Conn. App. 236, 239-40,717 A.2d 789 (1998).
The law of the case is inapplicable here for two reasons. First, as allowed by the rules of practice, the plaintiff pleaded over and filed an amended complaint after the motion to strike was granted. See Practice Book § 10-44. In the amended complaint the plaintiff adds four paragraphs that were not in the original complaint. First, in count one, paragraph six, the plaintiff more specifically delineates that on several occasions, the defendant assured him that his job was secure. Second, in paragraph seventeen of the fourth count alleging intentional infliction of emotional distress, the plaintiff claims that although the defendant told him he was being discharged because his position was eliminated, his duties were actually given to younger, less senior employees of the in the company. In paragraph eighteen of this count, the plaintiff generally avers that the defendant knew that its actions were "extreme and/or outrageous and would cause the plaintiff to sustain severe emotional distress." These allegations are repeated in count five, paragraph sixteen. Count five claims negligent infliction of emotional distress. Finally, in paragraph nineteen of count five, the plaintiff alleges that defendant discharged the defendant in violation of the parties' agreement when it "knew or should have known that their [sic] actions would cause the plaintiff to sustain severe emotional loss and that . . . its conduct involved an unreasonable risk of causing the [p]laintiff emotional CT Page 16826 distress and . . . bodily harm."
Contrary to the defendant's view, these new allegations of the amended complaint are sufficiently different from those of the initial complaint and this difference precludes the court from finding that their legal sufficiency was fully considered or addressed by the ruling on the motion to strike. "While a party runs afoul of the doctrine of the law of the case if he or she simply repeats the pleading that has previously been stricken, a reformulated pleading must be assessed ab. initio to determine whether it states a cause of action." Mazza v. ConnecticutLight Power Co., Superior Court, judicial district of Waterbury, Docket No. 130546 (March 9, 2000, Hodgson, J.).
Second, the previous motion was a motion to strike, not a motion for summary judgment. The court must apply different standards to such motions. Although both motions may challenge the legal sufficiency of a pleading, a motion to strike requires the court to assume as true all well pleaded facts. Eskin v. Castiglia, 253 Conn. 516, 522, 753 A.2d 927
(2000). On the other hand, the court grants a motion for summary when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book §17-49. This determination is not limited to the pleadings. Indeed, mere reliance on unadmitted allegations in the pleadings is insufficient to establish the existence of material, factual disputes. New MilfordSavings Bank v. Raina, 38 Conn. App. 240, 245, cert. denied, 235 Conn. 915
(1995). Because different standards apply to these two types of motions, the court is not bound by the court's prior decision on the motion to strike. Galligan v. Edward D. Jones Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 389623 (November 13, 2000, Levin, J.); accord, McCutcheon Burr, Inc. v. Berman, 218 Conn. 512,526, ___ A.2d ___ (1991) (when the previous ruling involved the application of a different legal standard the law of the case is inapposite.)
 B STANDARD OF REVIEW
A motion for summary judgment, "is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). As previously stated, "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial CT Page 16827 court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Community Action for Greater Middlesex County, Inc. v.American Alliance Insurance Co., 254 Conn. 387, 398, 757 A.2d 387
(2000).
 C THE FIRST COUNT BREACH OF EXPRESS OR IMPLIED CONTRACT
In count one of the amended complaint, the plaintiff claims that there existed either an express or implied contract between the parties that the defendant's employment would only be terminated for just cause. As alleged in this complaint, this agreement is premised on representations made by the defendant's agents that the plaintiff's job was "secure," coupled with the length of time the defendant's manufacturing business had existed and the plaintiff's long period of service and satisfactory performance.
Although not specifically referred to in the amended complaint, the plaintiff in opposition to the motion for summary judgment, heavily relies on the defendant's personnel policies and practices" manual to support his position that he was not an at will employee who could be terminated at the will of the employer for any reason not prohibited by law. "[I]t is a general proposition that contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Burnham v. Karl Gelb, P.C., 252 Conn. 153, 158-59, 745 A.2d 178
(2000). "[T]he default rule of employment at will can be modified by the agreement of the parties." Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1, 15, 662 A.2d 89 (1995). "[T]he plaintiff [bears] the burden of proving . . . that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause" (Internal quotation marks omitted.) Id.
Numerous cases hold that an employer's personnel manual may create enforceable, contractual obligations requiring an employer to terminate an employee in a manner consistent with the provisions of the manual.Gaudio v. Griffin Health Services Corp., 249 Conn. 523, ___ A.2d ___ (1999); Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra, CT Page 16828324 Conn. 1; Coelho v. Posi-Seal International, Inc., 208 Conn. 106,544 A.2d 170 (1998).
The plaintiff here first relies on the disciplinary procedures of the defendant's personnel manual as evidence of an express or implied contract between the parties because it outlines a "progressive disciplinary procedure comprised of verbal warnings, written warnings and ultimate discharge." Defendant's Objection to Motion for Summary Judgment, p. 9 and Exhibit G. Assuming arguendo, that these disciplinary policies create contractual expectations, the plaintiff has not indicated how these policies are implicated here. As compared to other cases where written, disciplinary policies were used to find the existence and breach of employment contracts, this case does not involve a disciplinary termination. See, e.g., Gaudio v. Griffin Health Services Corp., supra,249 Conn. 523; Coelho v. Posi-Seal International, Inc., supra,208 Conn. 106. Stated differently, the plaintiff is not claiming that he was disciplined by the defendant in a manner violating the company's disciplinary procedures, nor is he claiming that a disciplinary violation is the only basis for an employee's termination under the manual's provisions. In fact, the manual states that non-disciplinary layoffs may occur for "economic and other factors."
Under the more applicable section concerning "Layoff and Recall," the manual expressly states, "When economic and other factors require reductions of the workforce, the Division policy shall be consistent, fair and equitable in the reduction of the workforce." More specifically in regard to long term reductions in the work force, the manual provides that "the least serviced employees in the affected departments will be identified." Plaintiff's Objection, Exhibit I. In regard to "Seniority," the manual indicates that "[i]t is the policy of the Wiring Device Division to recognize an employee's service with the Division and to protect the employee's seniority during periods of temporary, approved absence, or in intra-company transfers." Plaintiff's Objection, Exhibit H. The manual explains that one of the ways seniority may be lost is when "a laid-off employee is not recalled to active employment within the lesser of (a) a period equal to the employee's service with the Company or (b) two years (24 months) from the date last worked." Plaintiff's Objection, Exhibit F.
It is important to note that no evidence was presented to the court indicating that the manual contains a provision expressly disclaiming an intent to create contractual promises. See Gaudio v. Griffin HealthServices Corp., supra, 249 Conn. 535: "We have stated with unambiguous clarity that "employers can protect themselves against employee contract claims based on statements made in personnel manuals by following either (or both) of two simple procedures: (1) eschewing language that could CT Page 16829 reasonably be construed as a basis for a contractual promise; and/or (2) including appropriate disclaimers of the intention to contract. . . .", quoting, Finley v. Aetna Life Casualty Co., 202 Conn. 190, 199 n. 5.(fn9), 520 A.2d 208 (1987).
Additionally, the absence of any provision of the manual that definitively states that employees may be discharged at will or may only be discharged for just cause indicates that ". . . the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact."Bead Chain Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266, 274-75,439 A.2d 314 (1981). "Summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn, deal with the questions of motive, intent and subjective feelings and reactions." Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 112,639 A.2d 507 (1994).
In his affidavit in opposition to the summary judgment motion, the plaintiff states that when he was fired: some production previously done at the Bridgeport facility was moved to the defendant's Newtown facility; he was among the five, most senior employees at the defendant's Bridgeport manufacturing facility, but he was not offered the opportunity to move to the Newtown plant; other employees from the Bridgeport plant were moved to the Newtown facility; and within eight months of his transfer, a job opening, which covered his duties, was posted for the Newton facility and was filled by two employees who were younger and who had less seniority then him. The plaintiff affirmatively alleges, "My job duties did not `disappear' but were transferred to the Defendant's Newtown facility." These allegations are uncontroverted by the defendant by affidavit or other evidence.
The court finds that these allegations, coupled with the provisions of the defendant's personnel manual concerning seniority, loss of seniority, and layoff and recall, create material issues of disputed fact about whether enforceable agreements were established between the parties and breached by the defendant when it terminated the plaintiff. More specifically, these issues involve whether the plaintiff's termination was "fair and equitable" and consistent with the defendant's policies or representations as evidenced in its personnel manual that an employee's seniority would receive deferential consideration in work force reductions. If cause must exist to terminate an employee, an employer's economic need to reduce the work force may satisfy this good cause requirement. See, Coelho v. Posi-Seal International, Inc., supra,208 Conn. 119-123. However, an employer's need to reduce the work force does not establish good cause as a matter of law. Id. This question ordinarily presents an issue of fact for the jury's determination, and CT Page 16830 even when work force reduction is necessary, it must be accomplished in a manner consistent with whatever express or implied agreements exist between the employer and the employee. Id., 122-123.
In count one, the plaintiff also contends that he relied on the representations made to him by the defendant's agents and that these representations formed a contract. In his opposing affidavit, the plaintiff states that several years prior to his discharge, and in response to employee concerns about job security at the Bridgeport facility, an agent of the defendant spoke to the him and other employees. He informed them that their jobs were "secure" and that they did not have to be concerned about transfers of work from Bridgeport to other facilities. The plaintiff further stated that some years earlier,[1] another agent of the defendant made similar representations to him, and further saying that the defendant's business had been in existence for 100 years and would be around for another 100 years. The plaintiff also states in his deposition that he believed that "If you say `don't worry about your job' you know, `your job is secure', to me that's basically a promise to an individual or individuals." (Defendant's Affidavit, Exhibit F, p. 115). In contrast to his claims that an agreement of continued employment was made, the defendant in his deposition does admit that his supervisor told him in 1995, "[Y]ou know, you're not going to retire from here." (Defendant's Affidavit, Exhibit F, p. 83, line 3-4).
In support of its motion for summary judgment, the defendant argues that the plaintiff cannot pluck phrases out of context to establish a meeting of the minds and the plaintiff has failed to show that the defendant agreed by words or conduct to undertake a contractual commitment to discharge the plaintiff only for good cause. The defendant insists that assuming that the statements attributed to the defendant's agents were made, at most plaintiff has charged the existence of "permanent" employment, that does not change his at will status. On the other hand, the plaintiff contends that these assurances that his employment was "secure" involved a commitment that his employment would not be terminated as long as he continued good work performance.
The meaning of these comments by the defendant's agents can only be determined by a consideration of the context in which they were made and the nature of the parties exchange. The court cannot say as a matter of law that these statements, coupled with the previously discussed provisions of the personnel manual, are insufficient to support the plaintiff's cause of action for breach of an implied contract, and in varying contexts, similar representations have been found to modify an employee's at will status. See, e.g., Gaudio v. Griffin Health, supra,249 Conn. 523; Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,
CT Page 16831 supra, 234 Conn. 1.
The court's task in resolving a motion for summary judgment is to determine whether there exist material factual disputes, not to resolve them once they are identified. Furthermore, in ruling a motion for summary judgment, the evidence must be construed in the light most favorable to the non-movant. Witt v. St. Vincent's Medical Center,252 Conn. 363, 368, 746 A.2d 753 (2000). As just emphasized, the existence of an implied contract requires an evaluation of the reasonable inferences that can be made to determine the parties' intent. Gaudio v.Griffin Health, supra, 249 Conn. 533. These issues are fact specific and not ordinarily amenable to summary disposition.
 D SECOND COUNT Breach of the Duty of Good Faith Fair Dealing
In the second count of the complaint, the plaintiff alleges that the defendant "breached the implied covenant of good faith and fair dealing." The covenant of good faith and fair dealing is "a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy."Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 567, 479 A.2d 781
(1994).
Since the plaintiff has alleged sufficient facts indicating the existence of a contract with terms other than an at-will employment, the covenant of good faith and fair dealing is relevant. "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231,238, 618 A.2d 501 (1992). "Bad faith means more than mere negligence; it involves a dishonest purpose." Id., 237.
The plaintiff complains that the defendant fired him despite a commitment that his employment would be secure. The plaintiff further alleges that the defendant failed to recall him, and then replaced him with younger people having less seniority in violation of the defendant's own personnel manual. These allegations are sufficient to support a claim of bad faith and dishonest purpose in violation of the duty of good faith and fair dealing. CT Page 16832
 E THIRD COUNT Negligent Misrepresentation
In count three, the plaintiff asserts a cause of action for negligent misrepresentation. Connecticut courts have adopted § 552 of the Restatement (Second) of Torts (1977), which states that negligent misrepresentation applies to: "[O]ne who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability . . . if he fails to exercise reasonable care or competence in obtaining or communicating the information." See also Williams Ford, Inc. v. HartfordCourant Co., 232 Conn. 559, 576, 657 A.2d 212 (1995). "[E]ven an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Internal quotation marks omitted.) D'Ulisse-Cupo v. Board of Directorsof Notre Dame High School, 202 Conn. 206, 217, 520 A.2d 217 (1987).
The plaintiff described in his opposing affidavit and deposition the false and negligent representations allegedly made by the defendant. Much of the plaintiff's argument is premised on his claim that the defendant represented and assured him that his job was secure when the defendant knew or should have known that these assurances were false.
In his affidavit, the plaintiff refers to a meeting of employees in the company cafeteria that took place approximately two years prior to his discharge. At this meeting the plaintiff and other employees were informed that their "jobs were secure and that [they] did not have to be concerned about the transfer of production work from the Bridgeport manufacturing facility." Similarly, some years prior to his termination, another agent of the defendant represented to the plaintiff that his "job was secure and stated that Hubbell had been in existence for 100 years and would be here for another 100 years."
In his deposition, the plaintiff further clarifies the basis of his claims as follows: "[C]ompanies have forecasts. They have projected forecasts on what they're doing. . . . I believe that Hubbell was moving their whole line down to Puerto Rico and it was going to take years. . . ." (Defendant's Affidavit, Exhibit F, p. 127). He says that he knew that these statements were false because "[T]hey were shipping product and they were shipping stuff down to Puerto Rico." (Defendant's Affidavit, Exhibit F, p. 127). Plaintiff further states that he believes the agent knew the statements were false because "You have got to know what's going on. . . . [the vice-president of Hubbell's] like the president of the CT Page 16833 United States. Unless I am missing something here." (Defendant's Affidavit, Exhibit F, p. 130). The defendant insists that the statements attributed to the defendant's agents cannot be construed as factual assertions that there would never be a need to terminate employees or to transfer work, even many years into the future.
Although the court agrees with the defendant that a negligent misrepresentation claim must be based on information about the existence of facts, not forecasts, projections or expectations, the court also agrees with Judge Melville's assessment that the plaintiff has sufficiently set out a cause of action for negligent misrepresentation to withstand a summary disposition: "The plaintiff has specifically pleaded that the defendant represented and assured the plaintiff that his job was secure, but that the defendant knew or should have known that these assurances were false when made, and that the plaintiff has been harmed by the misrepresentation." See generally, D'Ulisse Cupo v. Board ofDirectors NDHS, 202 Conn. 206, 217-21, 520 A.2d 217 (1987).
 F FOURTH COUNT Intentional Infliction of Emotional Distress
In count four, the plaintiff alleges that the defendant knew that the plaintiff believed his job to be secure, but proceeded to discharge him despite the oral representations made by its agents and despite the plaintiff's seniority. The plaintiff also contends that after his discharge, the defendant gave his job duties to younger, less senior employees, and failed to offer him another position within the company. The plaintiff believes that he was entitled to this offer due to his seniority. The plaintiff finally claims that the defendant knew its actions were extreme and outrageous, and that they would cause the plaintiff severe emotional distress.
The defendant's maintains that it is entitled to summary judgment on this claim for intentional infliction of emotional distress because even if the plaintiff's accusations are true, the plaintiff's claim fails as a matter of law. More specifically, the defendant argues that this conduct in terminating the plaintiff was not extreme or outrageous and the plaintiff has failed to offer evidence that he suffered severe emotional distress. The court agrees.
The legal standard for intentional infliction of emotional distress is well settled and was repeated last year by the Connecticut Supreme Court in Appleton v. Board of Education, 254 Conn. 205, 210, 757 A.2d 1059
CT Page 16834 (2000), wherein the court stated: "In order for the plaintiff to prevail for a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.)
"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id. Occurrences that are "distressing and hurtful to the plaintiff [may fail to] constitute extreme and outrageous conduct. . . ." Id., 211. "The mere act of firing an employee, even if wrongfully motivated, does not [rise to the level of extreme and outrageous behavior]." (Internal quotation marks omitted.) Muniz v. Kravis,59 Conn. App. 704, 710, 757 A.2d 1207 (2000).
Assuming arguendo that the allegations of the fifth count of the complaint are true, the defendant's actions do not rise to the level of extreme and outrageous conduct which is proscribed by the law with the tort of intentional infliction of emotional distress. "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) "It is likely that a person whose employment is terminated will suffer some degree of stress and anxiety regardless of whether the termination was lawful and proper or wrongful and tortious in nature." Brewer v. WilcoxTrucking, Inc., Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 479546 (June 22, 1998, Leheny, J.).
In addition, the plaintiff fails to present evidence that he suffered severe emotional distress. In his deposition, when asked about the extent of his mental suffering the plaintiff stated that that he "went through a bad period of time mentally. . . . I was in a restaurant one night and I saw [defendant's agent] and I couldn't even deal with it, and I couldn't CT Page 16835 even talk to him. I couldn't do nothing." (Defendant's Affidavit, Exhibit F, p. 102-103). The plaintiff also recites that he had trouble sleeping and a "cringe in my stomach" when he passes the Hubbell plant. (Defendant's Affidavit, Exhibit F, p. 103). "In order for the plaintiff to prevail for a case for liability under intentional infliction of emotional distress. . . . [I]t must be shown . . . that the emotional distress sustained by the plaintiff was severe." Appleton v. Board ofEducation, supra, 210. Therefore, the defendant's motion for summary judgment on count four should be granted.
 G FIFTH COUNT Negligent Infliction of Emotional Distress
In count five, the plaintiff incorporates the prior allegations that the defendant wrongfully discharged him contrary to its representations, and he further asserts that the defendant's agents knew or should have know that their actions would cause the plaintiff severe emotional loss and the discharge did cause the plaintiff severe emotional distress.
The defendant argues that the plaintiff's claim for negligent infliction of emotional distress must fail because he has failed to establish that the defendant acted unreasonably in the termination process or that the defendant should have reasonably foreseen that its actions would cause physical injury to the plaintiff.
As explained by our Supreme Court in Parsons v. United TechnologiesCorp., 243 Conn. 66, 88-89, 700 A.2d 655 (1997), in order to prevail on a claim for negligent infliction of emotional distress, the plaintiff must show that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm . . . Accordingly, negligent infliction of emotional distress in the employment context arises only where it is "based upon unreasonable conduct of the defendant in the termination process." Morris v. Hartford Courant Co.,200 Conn. 676, 682, 513 A.2d 66 (1986). The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Madani v. Kendall Ford, Inc., 312 Or. 198, 204, 818 P.2d 930
(1991).
The court agrees with the defendant that assuming arguendo that the CT Page 16836 plaintiff's claims are true, they establish wrongful conduct, but not such conduct that is so unreasonable as to support a cause of action for negligent infliction of emotional distress. See generally, Parsons v.United Technologies Corp., supra, 243 Conn. 88-89. Any loss of employment is distressful, particularly one that is wrongful. The plaintiff has the burden to show that his employment termination was not just wrongful, but rose to a higher level of unreasonableness. Id. The plaintiff has not met this burden as a matter of law.
 III CONCLUSION
Therefore, for all the foregoing reasons, defendant Hubbell, Inc.'s motion for summary judgment is denied as to the First Count, the Second Count and the Third Count of the Amended Complaint, and the motion for summary judgment is granted as to the Fourth Count and the Fifth Count.
So ordered the 19th day of December 2001.
STEVENS, J.