[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#108)
This is an action for breach of an employment contract and negligent infliction of emotional distress. In her amended complaint, the plaintiff Rebecca Rivers (Rivers) alleges, in the alterative, that she had either an express contract (count one) or an implied contract (count two) of employment with the defendant Milford Mental Health Clinic, Inc. (MMHC) that she would not be terminated from her position without just cause and that her employment contract was breached as a result of her discharge from employment on May 12, 1997 without just cause. In the third count, Rivers alleges that the manner in which she was terminated resulted in the negligent infliction of emotional distress.
MMHC has filed a motion for summary judgment as to all three counts of the amended complaint. Although MMHC has denied the plaintiff's allegations regarding breach of express and implied contract, for the purposes of the motion for summary judgment it accepts her position that she could not be terminated except for just cause and argues that it is undisputed that Rivers' layoff was not arbitrary and capricious and that, under the circumstances of this case, the court can conclude there was just cause as a matter of law. Additionally, MMHC argues that as a matter of law the circumstances of the layoff do not rise to the level required to establish negligent infliction of emotional distress. The question presented by this motion for summary judgment is whether there is a genuine issue of material fact in this case regarding the reasons for and the circumstances of the layoff.
 -I-
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Hertz Corp. v. Federal Ins. Co., 245 Conn. 374, 381, 713 A.2d 820
(1998). The moving party has the burden of demonstrating the absence of a genuine issue of material fact, but the party opposing the motion must provide evidence to demonstrate the existence of such an issue. Appletonv. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000).
"In order to surmount a motion for summary judgment, a party must demonstrate that there exists a genuine issue of material fact. . . . CT Page 6462 Demonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . A material fact is one that will make a difference in the result of the case. . . . To establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact. . . . (Internal citations omitted)." New Milford Savings Bank v. Roina, 38 Conn. App. 240,244-45, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).
As a preliminary matter, the court must determine what material facts are alleged in the amended complaint and whether they are disputed. As previously stated, for the purposes of this motion MMHC does not dispute that there was an agreement, whether express or implied, not to lay off Rivers except for just cause. In the first count of her amended complaint, Rivers alleges that her express agreement with MMHC was breached because she was terminated for improper reasons; terminated without regard to or compliance with the requirements of the employment agreement and the handbook; and not allowed an opportunity to challenge and rebut the alleged reasons for her termination (¶ 12). In the second count of her amended complaint, Rivers alleges that her implied agreement with MMHC was breached because she was terminated without just cause and denied access to a complaint procedure (¶ 19) and she also incorporates the allegations of the first count regarding her termination. In the third count of her complaint, Rivers alleges that her termination was inconsiderate, humiliating and embarrassing in that the executive director of MMHC terminated her without notice and opportunity to be heard and did so publicly in front of some administrative staff (¶ 21). None of the allegations have been admitted by MMHC.
The following facts[1] are undisputed: Rivers initially began working at MMHC in September 1990 in a union position as a family reunification worker. In November 1993, she was offered and she accepted the non-union position of program coordinator of the intensive family preservation/reunification (IFP) program, a position for which she had applied in October 1993.[2] This position, which was funded by a grant from the Department of Children and Families (DCF), was not covered by a union contract nor by any provisions of any employee handbook.
In April 1997, MMHC was facing a budget shortfall for fiscal year 1998 resulting from grant reductions, grant revisions, reduced third-party reimbursements and a considerable loss of outside funding. Indeed, Rivers testified at her deposition that she was aware of a specific shortfall in CT Page 6463 the funding for her program and had personally attended meetings at DCF to attempt to increase the funding. (Rivers' deposition, pp. 59-61) At the time, DCF had a program which mandated reallocation of services that had led to reduced funding for the IFP program at MMHC. (July 18, 1997 DCF letter). MMHC's executive director, Barry Kasdan (Kasdan), appointed a committee of two senior managers, George Petronio (Petronio), the director of human resources, and Christine Lidz (Lidz), the clinical director, to make recommendations to accommodate the budget shortfall. By way of a memorandum dated April 25, 1997, Petronio and Lidz recommending eliminating certain positions, consolidating other positions and reassigning certain duties. One of the recommendations made was to eliminate the position of coordinator of the IFP program, in order to retain two full-time line workers,[3] and reassign those responsibilities to the director of Children's Services. Kasdan approved these recommendations.
On May 12, 1997, Rivers was informed that her position was being eliminated as part of general clinic layoffs due to budget cuts, effective June 6, 1997. Kasdan called her into his office, where Lidz and Petronio were also present, to advise her of his decision before it was announced to the entire staff. Kasdan offered Rivers an opportunity to speak with her own staff members before the general meeting (Rivers' deposition, pp. 120-21) and told her she did not have to attend the general meeting. Later, Kasdan personally apologized to Rivers' staff for the layoff. (Rivers' deposition, p. 128.) Rivers remained on staff until her termination date of June 6, 1997.
Rivers does not disagree that as of May 12, 1997 MMHC had a financial need to lay off someone in her department (Rivers' deposition, p. 158), but maintains that MMHC had failed to circumvent its financial problems by not submitting third-party payments in a timely manner (p. 136), by failing to shift budget funds (p. 142) and by maintaining an injured, non-working employee on its payroll. She maintains that she pointed out these improper internal management decisions to her supervisors. (Rivers' affidavit ¶ 4). She also maintains she was told during the course of her employment at MMHC that she would not be subject to layoff or that if the grants ran out she would be able to stay on in another position. (Rivers' deposition pp. 36, 41-44, 71, 77, Rivers' affidavit ¶ 6).
 -II- A.
As to the plaintiff's claims of breach of contract in the first and second counts of her amended complaint, for the purposes of this motion for summary judgment is undisputed that the parties had an agreement that CT Page 6464 Rivers was not to be discharged from her employment except for just cause. It is also undisputed that Rivers' position was managerial and not subject to the provisions of any union contract or employee handbook which set forth a grievance procedure or appeal process of the termination decision. Rivers does not allege that she was terminated in retaliation[4] for anything she did or said in connection with her employment at MMHC. Thus, the sole question as to the both the first and second counts is whether there is any genuine factual issue that the decision to terminate Rivers was arbitrary, capricious or made in bad faith.
Most contracts of permanent employment or employment for an indefinite term are terminable at will. D'Ulisse-Cupo v. Board of Directors of NotreDame High School, 202 Conn. 206, 211, n. 1, 520 A.2d 217 (1987). However, when a contract of employment contains an express or implied agreement that an employee cannot be terminated without just cause, the employer cannot terminate the employee for a reason that is either arbitrary or capricious or made in bad faith. Sheets v. Teddy's FrostedFoods, Inc., 179 Conn. 471, 475, 427 A.2d 385 (1980). "Although just cause substantially limits managerial discretion, this simply means that employers are forbidden to act arbitrarily or capriciously. In other words, an employer who wishes to terminate an employee for cause must do nothing more rigorous than proffer a proper reason for dismissal." (Internal quotation marks omitted; internal citations omitted). Gaudiov. Griffin Health Services Corp., 249 Conn. 523, 539, 733 A.2d 197
(1999).
A reduction in force, based on economic circumstances, can be a proper reason for terminating an employee and this issue can, at times, be decided on a motion for summary judgment. See, e.g., Gianaculas v. TransWorld Airlines, Inc., 761 F.2d 1391, 1395 (9th Cir. 1985) (summary judgment proper where evidence demonstrated a general reduction in force necessitated by company's economic circumstances and that plaintiffs' positions were abolished);; Cox v. Resilient Flooring Div. of CongoleumCorp., 638 F. Sup. 726, 731 (C.D.Cal. 1986) (summary judgment proper where plaintiff did not dispute reduction in force and that job eliminated); cf. Grayson v. American Airlines, Inc., 803 F.2d 1097, 1099
(10th Cir. 1986) (good cause for termination where evidence demonstrated economic downturn in airline industry caused by air traffic controllers' strike and deregulation necessitated layoffs). Summary judgment becomes inappropriate, however, when the employee comes forward with sufficient evidence to raise a genuine issue that a claimed reduction in force was merely a pretext used to terminate her. See, e.g., Grayson v. American Airlines, Inc., supra, 803 F.2d at 1099-1100
(summary judgment denied where plaintiff proffered evidence that he applied for other positions for which he was qualified, was willing to CT Page 6465 accept lower paying positions and company acted in bad faith); Harlan v.Sohio Petroleum Co., 677 F. Sup. 1021, 1031 (N.D. Cal. 1988) (summary judgment denied where plaintiff proffered evidence that defendant acted in bad faith).
The court recognizes that in Coelho v. Posi-Seal International, Inc.,208 Conn. 106, 122, 544 A.2d 170 (1988), the Supreme Court stated that "the question of whether an employer has terminated an employee because of a legitimate reduction in force or for other reasons is an issue to be determined by the trier of fact." (Emphasis supplied.) This statement was made in the context of a case in which the plaintiff clearly presented evidence "that he had been terminated as a result of his disputes with the director of manufacturing and that the reduction in force was a mere pretext for discharging him." Id., 123. While the court rejected the employer's argument that reduction in force is just cause per se, its statement does not preclude summary judgment from entering in a case in which there is no material factual dispute that the reduction in force was not a pretext for discharging the employee "in violation of contractual obligations, public policy grounds or statutory rights." Id., 122. This is such a case.
In this case, the only viable claim Rivers' has made is that MMHC's decision to lay her off, as opposed to some other employee in her department, violated its assurances to her that she would not be laid off in the event of grant reductions. She has not made any claims that her termination was in violation of public policy or statutory rights. Statements assuring an employee that she would not be laid off in the future do not amount to an enforceable promise that she will never be discharged. See, e.g., D'Ulisse-Cupo v. Board of Directors of Notre DameHigh School, supra, 202 Conn. at 212-16; Hayes v. Yale New HavenHospital, Superior Court, judicial district of New Haven, Docket No. 393656S (Pittman, J. Aug. 14, 2001) (statement that an employer is not presently planning any layoffs does not constitute a binding promise to a particular employee not to lay off that employee at some point in the future); Barbuto v. Backus Hospital, Superior Court, judicial district of New London at Norwich, Docket No. 42975 (April 13, 1995, Hendel, J. (3 Conn.L.Rptr. 360) (assurances that plaintiff would not be removed from a certain program insufficient to establish breach of express or implied contract); Leniart v. C S Distributors, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 516354 (January 21, 1994, Corradino, J.) (promise to plaintiff that she would not be laid-off held insufficient to establish a cause of action for breach of either express or implied contract); Neuharth v. Conn. Institute for theBlind, Superior Court, judicial district of Tolland at Rockville, Docket No. 42975 (March 8, 1991, Dunn, J.) (allegations of "assurances" that plaintiff would not be discharged do not rise to level of commitment to CT Page 6466 plaintiff necessary to state cause of action for breach of either express or implied contract).
It is undisputed that MMHC faced a reduction in funding that necessitated a layoff in the IPF program which was the subject of a reduced budget due to a state mandated reallocation of services program. Even though Rivers maintains that MMHC mismanaged its finances, she admits to the shortfall in her own program and she does not claim she was discharged because she pointed out her concerns regarding the mismanagement to her supervisors. It is also undisputed that Kasdan, upon the recommendation of Lidz and Petronio, exercised his managerial discretion to discharge Rivers, a manager, so that he could retain two line workers. Rivers has failed to present any evidence that suggests Kasdan's decision was motivated by bad faith. Finally, Rivers has not come forward with evidence that she sought reassignment or sought to be rehired when she became aware that some funding had been restored to MMHC's programs following her termination.[5]
Thus, the undisputed evidence before the court leads clearly to the conclusion, as a matter of law, that MMHC's termination of Rivers was for just cause. Rivers has failed to raise a genuine issue of fact that her discharge was arbitrary, capricious or made in bad faith. Accordingly, the motion for summary judgment is granted as to the first and second counts of the amended complaint.
 B.
In the third count of the amended complaint, Rivers alleges negligent infliction of emotional distress in the manner of her termination. Specifically, she alleges that Kasdan terminated her in an inconsiderate, humiliating and embarrassing manner in that he did so, publicly in front of some administrative staff, without notice and opportunity to be heard. Neither these allegations nor the undisputed facts rise to the level of actionable negligent infliction of emotional distress.
"[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp.,243 Conn. 66, 88-89, 700 A.2d 655 (1997). "The dispositive issue . . . [is] whether the defendant's conduct during the termination process was sufficiently wrongful such that the defendant should have realized that CT Page 6467 its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Perodeau v. Hartford,259 Conn, 729, 751, ___ A.2d ___ (2002).
The undisputed facts establish that on May 12, 1997, Kasdan called Rivers into his office, where Lidz and Petronio were also present, to advise her of his decision before it was announced to the entire staff. Kasdan offered Rivers an opportunity to speak with her own staff members before the general meeting and told her she did not have to attend the general meeting. Later, Kasdan personally apologized to Rivers' staff for the layoff. A written memorandum from Kasdan and Petronio to Rivers, also notifying her of the termination, was gracious and apologetic.[6]
Moreover, although Rivers was informed of her termination on May 12, 1997 she remained employed until June 6, 1997.
Rivers has failed to raise a genuine issue of material fact that the manner of her termination was unreasonable or exceeded the bounds of socially tolerable behavior and that it posed an unreasonable risk of causing her emotional distress that might result in illness or bodily harm. Accordingly, the motion for summary judgment is granted as to the third count of the amended complaint.
 -III-
For the reasons stated above, the defendant's motion for summary judgment is granted. Judgment shall enter in favor of the defendant Milford Mental Health Clinic, Inc. and against the plaintiff Rebecca Rivers on all counts of the amended complaint.
LINDA K. LAGER, JUDGE